**William H. CUDDY, Appellant,**

**v.**

**Gerald P. CARMEN, Administrator, General Services Administration.**

No. 84–5132.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 26, 1985.

Decided May 21, 1985.

William H. Cuddy, pro se.

Diane M. Sullivan, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., and Royce C. Lamberth, R. Craig Lawrence, and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before ROBINSON, Chief Judge, and WRIGHT and WALD, Circuit Judges.

Opinion for the court filed by Circuit Judge WRIGHT.

J. SKELLY WRIGHT, Circuit Judge:

William H. Cuddy, the appellant here, sued the General Services Administration (GSA), alleging that its failure to hire him resulted from age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* (1982). In the original District Court proceeding a jury rendered judgment for GSA. Cuddy then appealed. This court vacated the verdict, holding that a jury trial was improper in an ADEA action against the federal government and clarifying the standard for liability in ADEA actions. *See Cuddy v. Carmen,* 694 F.2d 853 (D.C.Cir. 1982). We remanded the case to the District Court for additional proceedings—specifically the entry of findings of fact and conclusions of law by the District Court itself. On remand the District Court, relying entirely on the original trial evidence, again held for GSA. Cuddy now appeals for the second time.

The sole issue on this appeal is whether the District Court's findings of fact and overall finding that GSA did not discriminate against Cuddy on the basis of his age are clearly erroneous. If they are clearly erroneous, this court must reverse. In this case, however, although the evidence supporting the District Court's subsidiary and ultimate factual findings leaves much to be desired, we conclude that the critical findings are not clearly erroneous. Consequently, we affirm the judgment of the District Court.

## I. FACTUAL BACKGROUND [1]

Cuddy was employed for many years by a private telephone company in Connecticut. In the mid-1960's, anticipating his mandatory retirement some years later (at age 65 in 1976), he filed an employment application with the federal government. In 1966 he was certified by the Civil Service Commission (CSC) for government employment in a GS–13 (senior level) communications specialist position. Having been certified for government employment, he maintained his eligibility over the following years. During those years he also applied (unsuccessfully) for advertised government jobs when he was eligible to fill them.[2]

In 1975 Cuddy remained eligible for GS–13 positions. In February of that year the Voice Operations Branch (VOB) of the Automated Data and Telecommunication Service (ADTS) of GSA advertised a GS–13 communications specialist position for which Cuddy was qualified. Having learned of this advertisement, Cuddy diligently attempted to ensure that he would be considered for the position. First, he completed the necessary official tasks. (For example, he returned the certification, indicating his continued interest in the position.) This ensured that he would be included on the CSC certificate of non-government employees who were eligible for the position, which was sent to the GSA selecting official. In addition, Cuddy visited Robert Schoenfelder, the GSA personnel employee in charge of handling Civil Service Commission candidates, and Albert Treichel, the GSA supervisor who would actually select the candidate to fill the position. The purpose of these visits was apparently to acquaint the GSA officials with his interest in and his qualifications for the job and to make sure that his application did not fall through any bureaucratic cracks. In spite of his perseverance, how-

---

1. *See also Cuddy v. Carmen,* 694 F.2d 853, 854–856 (D.C.Cir.1982) (summarizing factual background).

2. For a non-government employee to obtain a government job, he or she must take the CSC examination and qualify for that job. In contrast, government employees may apply directly for another government job simply by submitting their applications. These applications are apparently normally screened by a merit promotions panel to select those applicants who are best qualified for the position.

It is possible for a government official to consider both government and non-government employees for a particular job opening. Where the job is advertised both within and without the government, this dual consideration is accomplished based on the concurrent submission of a "certificate of eligibles" (qualified non-government employees) from CSC and of the list of qualified in-house candidates from the merit promotions panel.

ever, Cuddy was not selected for the job. Instead, a GSA employee, Robert Daley (aged 37) was selected.

After exhausting his administrative remedies, Cuddy brought suit against GSA in the District Court, asserting that GSA's failure to hire him had been motivated by discrimination against him due to his age. Following the presentation of Cuddy's case-in-chief, the District Court, applying the three-part evidentiary structure of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), ruled that Cuddy had established a *prima facie* case of age discrimination and denied GSA's motion for a directed verdict. *See* Transcript of Trial Proceedings (Tr.) at 146. The introduction of evidence by GSA and of rebuttal evidence by Cuddy then proceeded, and the case finally went to a jury. In instructing the jury, the District Court stated that the jury was to return a verdict for the plaintiff only if it found that age was *the* determining factor in GSA's decision not to hire Cuddy for the position. *See Cuddy, supra,* 694 F.2d at 855–856. The jury returned a verdict for GSA, and Cuddy appealed.

On appeal, we vacated the jury verdict and remanded the case to the District Court. We noted that a jury trial was inappropriate in an ADEA case against a federal government defendant. *See id.* at 859. Consequently, we remanded to the District Court for that court to make findings of fact and conclusions of law. *See id.* at 860. We also noted that the proper standard for liability under the ADEA was that age be *a* determining factor in the employment decision; it need not be *the* determining factor in the decision. *See id.* at 857–858 n. 22.

On remand, the District Court entered findings of fact and conclusions of law in accordance with our instructions. Based on its findings, the District Court again

entered judgment in favor of GSA. *See Cuddy v. Carmen,* 580 F.Supp. 788 (D.D.C. 1984). Cuddy now appeals that judgment to this court, contending that the District Court's findings were clearly erroneous.

## II. LEGAL FRAMEWORK AND STANDARD OF REVIEW

▮ It is well established in this circuit that we will apply to ADEA cases the scheme for allocating evidentiary burdens that has evolved in the context of Title VII discrimination cases. *See, e.g., Krodel v. Young,* 748 F.2d 701, 705 (D.C.Cir.1984) (citing cases); *Cuddy, supra,* 694 F.2d at 856–857. This scheme allocates the burden of presenting the relevant evidence between the plaintiff and the defendant. First, the plaintiff must present a *prima facie* case of discrimination. In failure-to-hire or failure-to-promote cases, this consists of a showing that (1) the plaintiff belongs to the group protected by the relevant statute (here the group of persons between the ages of 40 and 70); (2) the plaintiff was qualified for the position in question; (3) the plaintiff was not hired/promoted; and (4) a person not of the protected group was selected (here a person below the age of 40). *See Krodel, supra,* 748 F.2d at 706.[3]

▮ Once the plaintiff has presented this *prima facie* case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell, supra,* 411 U.S. at 802, 93 S.Ct. at 1824. This requirement imposes upon the defendant the burden of producing evidence "that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine, supra,* 450 U.S. at 254, 101 S.Ct. at 1094.

▮ Although this evidence must be "legally sufficient to justify a judgment for the defendant," *id.* at 255, 101 S.Ct. at 1094, it is merely one of production, not one

---

**3.** Following this four-part formula is not the only way in which a plaintiff can make a *prima facie* case. *See generally* B. SCHLEI & P. GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 153–154 (2d ed. Supp.1983).

of persuasion. *See Sweeney v. Board of Trustees of Keene State College*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978) (*per curiam*); *Krodel, supra*, 748 F.2d at 705; *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1011–1012 (1st Cir.1979). If the defendant fails to meet this burden, however, the plaintiff must prevail *if* he or she has made out a proper *prima facie* case and the District Court believes the plaintiff's evidence. *See Burdine, supra*, 450 U.S. at 254, 101 S.Ct. at 1094. *See also Cuddy, supra*, 694 F.2d at 857 n. 21; *Nanty v. Barrows Co.*, 660 F.2d 1327, 1331–1332 (9th Cir.1981). The purpose of placing this burden on the defendant is "simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Burdine, supra*, 450 U.S. at 255–256, 101 S.Ct. at 1094–1095.

■ If the defendant carries its burden of production, the plaintiff must then carry his or her overall burden of persuasion in order to prevail. The plaintiff may carry this burden either indirectly by showing that the reason proffered by the defendant was in fact a pretext or directly by showing that it was more likely than not that the defendant was actually motivated by discrimination. *See id.* at 256, 101 S.Ct. at 1095. If the plaintiff fails to carry this burden, the plaintiff will lose.

Underlying the three-part approach of *McDonnell* and *Burdine*, therefore, is the ultimate question of the case: whether the defendant illegally discriminated against the plaintiff. In ADEA cases this question takes the form of whether age was a determining factor in the disputed employment decision. *See Krodel, supra*, 748 F.2d at 706. And, as the Supreme Court has recently noted, courts must not become so enchanted with the structure of *McDonnell-Burdine* that they lose sight of this ultimate question:

The "factual inquiry" in a Title VII case is "[whether] the defendant intentionally discriminated against the plain-

tiff." * * * The prima facie case method established in *McDonnell Douglas* was "never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." * * * Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff." * * *

*U.S. Postal Service Board of Gov. v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (brackets in original; citations and footnotes omitted). At this point, observed the Supreme Court, "the district court must decide which party's explanation of the employer's motivation it believes." *Id.* at 716, 103 S.Ct. at 1482. Thus, as the Supreme Court noted in *Aikens*, the *McDonnell-Burdine* structure and the issues it addresses do not mean "that trial courts or reviewing courts should treat discrimination differently from other ultimate questions of fact." *Aikens, supra*, 460 U.S. at 716, 103 S.Ct. at 1482. *See also Molerio v. FBI*, 749 F.2d 815, 823 (D.C.Cir.1984).

■ Our task in reviewing a judgment entered in the District Court is well established. First, we must assure ourselves that the District Court discerned and applied the proper legal standard. Next, we must review the District Court's factual findings and application of the legal standard to the facts found. The legal questions are *de novo* questions for the reviewing court. The factual questions, however, are reviewed according to the clearly erroneous standard. *See* Fed.R.Civ.P. 52(a); *Anderson v. City of Bessemer City, N.C.*, — U.S. ——, ——, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *Pullman-Standard v. Swint*, 456 U.S. 273, 287–288, 102 S.Ct.

1781, 1789–1790, 72 L.Ed.2d 66 (1982); *Krodel, supra,* 748 F.2d at 706.

 With respect to the question whether factual findings are clearly erroneous, this court noted in *Case v. Morrisette,* 475 F.2d 1300, 1307 (D.C.Cir.1973), that "a finding is 'clearly erroneous' if it is without substantial evidentiary support or if it was induced by an erroneous application of the law." (Footnotes omitted.) Further, even if there is some evidence supporting a finding, that finding is clearly erroneous if "on the entire evidence [the reviewing court] is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). *See also Morrisette, supra,* 475 F.2d at 1307–1308. Clearly erroneous review, however, is not *de novo.* As the Supreme Court recently observed, "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson, supra,* —— U.S. at ——, 105 S.Ct. at 1512.

In reviewing a District Court's findings of fact with respect to discriminatory intent, therefore, we proceed under the clearly erroneous standard. Specifically, if the District Court has found that the defendant did act with the requisite discriminatory intent, we review that ultimate finding (and the subsidiary findings that support it). *See Anderson, supra.* If the District Court has not so found, however, the District Court, if it has proceeded correctly under *McDonnell-Burdine,* will have found that the defendant acted for a legitimate, nondiscriminatory reason. In that case, it is this finding of fact (and its subsidiary findings) that we must review.[4] In reviewing such a finding, of course, we will examine whether it has sufficient evidentiary support. If it does, and if we are not otherwise convinced that the finding is clearly erroneous, we must affirm the District Court.[5] If it does not, however, the finding of a legitimate, nondiscriminatory motive is clearly erroneous and must be reversed. Further, under these circumstances judgment for the plaintiff will, in most cases, be mandated as a matter of law since the "legally mandatory, rebuttable presumption," *Burdine, supra,* 450 U.S. at 254 n. 7, 101 S.Ct. at 1094 n. 7, that arose when the plaintiff made out his or her *prima facie* case will never have been properly rebutted.[6]

 In sum, our review of a District Court's factual findings with respect to discriminatory intent is conducted under the normal clearly erroneous analytical framework for reviewing findings of fact. Within this framework, however, our review will ensure, albeit indirectly, that the objectives of the *McDonnell-Burdine* structure have been met in a particular case. Review of a finding of discriminatory intent will ascertain whether the plaintiff met his or her overall burden of persuasion. Conversely, review of a finding of no discriminatory intent will ascertain whether the defendant's burden was properly met.[7]

---

4. As noted above, where the plaintiff has proceeded according to the *McDonnell-Burdine* structure, the duty of the District Court, after all the evidence has been presented, is to decide which party's version of the defendant's motivation it believes. Accordingly, if the District Court believes the defendant's version, it must make a finding of fact to that effect—that is, a finding that the defendant acted for whatever legitimate, nondiscriminatory reason regarding which it produced evidence. A bare finding that the defendant did not act for a discriminatory reason or that the plaintiff did not show that the defendant did act for a discriminatory reason will not suffice.

5. We must assure ourselves as well that the plaintiff had notice and opportunity to show pretext. *See U.S. Postal Service Board of Gov. v. Aikens,* 460 U.S. 711, 716 n. 5, 103 S.Ct. 1478, 1482 n. 5, 75 L.Ed.2d 403 (1983).

6. Obviously, judgment for the plaintiff will not be appropriate where that presumption never arose due to the plaintiff's failure to make out a *prima facie* case.

7. Clearly erroneous review, however, merely assures us that the defendant's burden was met. It does not require that the defendant have met it. That is, if there is evidence sufficient to

These inquiries, however, are accomplished through the primary vehicle of clearly erroneous review rather than the after-the-fact inquiry into the intermediate *McDonnell-Burdine* steps rejected in *Aikens*. With this overall approach squarely in mind, we turn to the specific questions at hand.

### III. REVIEW OF THE DISTRICT COURT DECISION

It is clear from the District Court's opinion in this case that it applied the proper legal standard: whether age was a determining factor in GSA's decision not to hire Cuddy. *See* 580 F.Supp. at 791. Thus we turn to the questions regarding the actual decision in favor of GSA. We must now determine whether the District Court's factual finding that, ultimately, Cuddy did not show illegal discrimination—specifically, that GSA acted for a legitimate, nondiscriminatory reason—was clearly erroneous.

#### A. *The Evidence Presented at Trial*

At trial, the disputed evidence concerned the GSA consideration of the applicants for the position in question and the GSA reasons for selecting Daley for the position and rejecting Cuddy. Cuddy testified that he had met with both Treichel (the selecting official) and Treichel's assistant and had discussed with them his certification for the position and his qualifications for the job. These discussions took place before the selection of Daley. *See* Tr. at 31–33. Cuddy also testified that he had given a copy of his application/qualifica-

tions form directly to Treichel. *See id.* at 32. He further testified that after the selection he had gone to talk to Treichel. At that meeting, Cuddy testified, Treichel had explained that the position had been filled, that he had been directed by his supervisors to choose a younger man for the job, and that his own job would have been in jeopardy if he had resisted. *See id.* at 33, 260. Finally, Cuddy introduced evidence to the effect that Treichel knew his age (which was on his application), *see id.* at 43–44; *see also* Plaintiff's Exhibit No. 8, Appendix to Brief for Appellant (App.) at 20; that Treichel had stated in an earlier affidavit that "[a]ge I believe is a minor consideration to selection but it is not the sole factor," *see* Tr. at 56; *see also* Plaintiff's Exhibit No. 10A, App. 23–24; and that GSA seemed to emphasize hiring younger employees, given that it recruited on university campuses, *see* Tr. at 62; *see also* Plaintiff's Exhibit No. 11, App. 27.[8]

GSA then introduced evidence regarding Treichel's actions in selecting Daley for the position. First, Treichel testified that he could not recall considering Cuddy's application for the position. *See* Tr. at 200; *see also* Plaintiff's Exhibit No. 10A, App. 23.[9] He also testified that he had selected Daley for the position because Daley could be immediately productive given his familiarity with GSA operations. *See* Tr. at 193–195; *see also* Plaintiff's Exhibit No. 10A, App. 24. Finally, Treichel stated that, if he *had* considered Cuddy's application, he would still have chosen Daley because Cud-

---

support a finding that the defendant acted for a legitimate, nondiscriminatory reason, it matters not who introduced that evidence.

**8.** Cuddy also introduced into evidence a copy of a letter sent to him by GSA informing him that "[a]ll the eligible candidates on the [CSC] certificate were considered along with Federal employees who applied," and that he had not been selected. Plaintiff's Exhibit No. 3, App. 13.

**9.** Treichel said he could not remember seeing the CSC list and the in-house list simultaneously. *See* Tr. at 211; Plaintiff's Exhibit No. 10A, App. 23. He did indicate, however, that he might have seen the CSC list and/or Cuddy's application at some point either before or after

the selection was made. *See* Tr. at 211–212, 235. On cross-examination he said he did remember that he did not see the two lists simultaneously. *See id.* at 213.

The other evidence going to the question whether Treichel saw the two official lists does not help to clarify the situation. As the District Court noted, "Schoenfelder testified that he sent the Certificate of Eligibles to Treichel along with the referral of federal candidates." 580 F.Supp. at 792. But the evidence also showed that "Schoenfelder returned the original Certificate to CSC on May 20, 1975 (retaining a copy for 'possible later reactivation'), that the selection panel met on May 20 to consider federal applicants, and that the selection of a federal applicant was made on June 5, 1975." *Id.*

dy's experience was inferior to Daley's. *See* Tr. at 200.

On cross-examination and on rebuttal (Cuddy testifying), Cuddy tried to show that Daley had been involved in another project for at least six months after the selection—an involvement that prevented Daley from immediately assuming his new responsibilities fully. *See* Tr. at 215–217.[10] Cuddy also indicated that he, on the other hand, would have been immediately available. *See* Plaintiff's Exhibit No. 29, App. 62. Treichel responded, however, by testifying that the project in which Daley was involved was in fact part of the work of Treichel's section at the time. *See* Tr. at 217–219; *see also* testimony of Robert Daley, *id.* at 248–249. Cuddy also tried to show that his private experience was very similar to experience with the federal system and that Daley's experience would thus not have been more advantageous to GSA. *See generally id.* at 201–211, 260–263. Finally, Cuddy introduced evidence of a statement made by the GSA Equal Employment Opportunity officer that age had been a selection factor. *See* App. at 22a.

## B. *The District Court's Findings*

Applying the *McDonnell-Burdine* structure to the evidence presented, the District Court concluded that Cuddy had made out a *prima facie* case and that the defendant had successfully carried its burden of producing evidence of nondiscriminatory intent. The court noted in this context that

Albert Treichel testified that plaintiff's experience was not oriented towards the work of the VOB [Voice Operations Branch], in that since VOB was handling the "10/7 conversion," [11] he needed someone to keep up with daily activities and to become immediately productive. Treichel testified further that a person with Cuddy's experience would need a considerable amount of training in the

specialized area of federal telecommunications.

580 F.Supp. at 791–792. The court went on to conclude that Cuddy's scattered evidence of statements by Treichel and by the GSA EEO Director and of Cuddy's own qualifications and Daley's lack thereof were insufficient to show that the reason advanced by GSA for Cuddy's non-selection was pretextual and that, consequently, Cuddy had not carried his burden of persuasion.

The District Court's crucial finding relevant to GSA's decisionmaking processes was the finding that

Treichel did not select Cuddy for the GS–13 Communications Specialist position because his experience was not oriented towards the work of the VOB and because he felt that it would have been necessary to provide a considerable amount of training for an individual with Cuddy's experience. In essence, Treichel concluded that Mr. Cuddy was unfamiliar with the specialized nature and function of the government's telecommunications system.

*Id.* at 791. The District Court also found that "[t]he reason for the plaintiff's nonselection had nothing to do with his age." *Id.*

The court, in addition to enumerating the findings above, also observed that "the evidence indicate[d] that it [was] quite possible that plaintiff's name was never referred to Treichel for consideration." *Id.* at 792. In support of this observation, the District Court noted Treichel's testimony that he could not remember ever having seen the certificate at the time the selection was made. Further, the evidence of when and to whom the certificate was sent indicated that it might not have officially been sent to Treichel prior to his making the selection. With respect to the relevance of this evidence to Cuddy's discrimination claim, the District Court concluded that "an

---

**10.** This project was the so-called "10/7 conversion" project in which the entire federal telecommunications system was altered to allow seven-digit dialing where it had previously required ten-digit dialing. This was admittedly a

massive enterprise. *See Cuddy v. Carmen, supra* note 1, 694 F.2d at 855 n. 5. *See also* Tr. at 188–192.

**11.** *See* note 10 *supra.*

error may have occurred in the selection process, but there is nothing to show that it rises to the level of discrimination." *Id.*

C. *Review of the District Court Findings Under the Clearly Erroneous Standard*

1. *Finding that GSA selected Daley because he was the best qualified applicant.* As summarized above, Treichel testified that he selected Daley because Daley was the most qualified applicant. He also testified that, although he did not recall considering Cuddy's application at the time he made the selection, he would not have chosen Cuddy because of his inferior experience and qualifications. There was additional testimony that Treichel had seen and was familiar with Cuddy's application prior to the time the selection was made. There was also evidence, however, that the CSC certificate of eligibles was in fact not before Treichel for official consideration when he selected Daley for the position.

 With respect to this evidence, the District Court made two apparently alternative findings. First, it found that GSA had rejected Cuddy because of his inferior qualifications. Examining the evidence, we conclude that this finding was not clearly erroneous.

From the evidence, one might reasonably infer that Treichel, although he did not officially consider Cuddy's application, did informally and effectively consider it in making his selection for the position. That is, because he was aware of Cuddy's qualifications he considered Cuddy at the time he considered Daley, even though Cuddy's application was not officially before him. Building on this permissible inference, the next question is whether the additional evi-

dence adequately supports a conclusion that Treichel acted for the legitimate, non-discriminatory reason of Cuddy being less qualified for the job.

Treichel testified that he chose Daley because Daley was the best qualified of the applicants. He also testified that, *if he had considered Cuddy's application,* he would not have selected Cuddy because of Cuddy's lack of relevant experience. This latter testimony alone would clearly be insufficient evidence of what the defendant's motivation here actually was: The question at hand is the *actual* reason for the employment decision—not some *hypothetical* nondiscriminatory reason that an employer submits after the fact.[12] The former evidence, however, Treichel's testimony that he did in fact select Daley because Daley was the best qualified for Treichel's needs, supports a reasonable inference that Treichel in fact did not select Cuddy because Cuddy's qualifications were inferior to Daley's: Assuming that Treichel considered Cuddy and Daley concurrently, the fact that he determined Daley to be the best qualified applicant clearly supports an inference that he determined Cuddy to be less qualified than Daley.

Thus there was evidence supporting the District Court's finding that GSA rejected Cuddy because of his inferior qualifications. And we believe that this evidence, although far from overwhelming, is substantial enough to support the finding. Further, Cuddy's evidence that GSA's articulated reason here was a pretext is not weighty or convincing enough to topple the somewhat precarious tower of inferences supporting the finding of the District Court.

---

**12.** This point is supported by the case law regarding the defendant's *McDonnell-Burdine* burden. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981) (defendant must produce "evidence that the plaintiff *was* rejected, or someone else *was* preferred, for a legitimate, nondiscriminatory reason" (emphasis added)). *See also Rowe v. Cleveland Pneumatic Co.,* 690 F.2d 88, 97 (6th Cir.1982); *Nanty v. Barrows Co.,* 660 F.2d 1327, 1332 (9th Cir.1981). The pur-

pose of the *McDonnell-Burdine* allocation of burdens is to focus the issues so as to enable the plaintiff to effectively try to show pretext. *See Burdine, supra,* 450 U.S. at 255–256, 101 S.Ct. at 1094–1095. Allowing an employer to meet its *McDonnell-Burdine* burden by testifying to possible legitimate reasons for employment decisions, whether or not those reasons were the actual motivation behind the disputed decisions, would clearly circumvent this purpose. *See Rowe, supra,* 690 F.2d at 97.

Cuddy's evidence of remarks made by Treichel is either capable of being discounted (because it meant little in the context) or of being disbelieved. Thus, although Cuddy testified that Treichel spoke of being pressured to choose the younger candidate, Treichel's own testimony indicated that he had never made representations to that effect to Cuddy. *See* Tr. at 197–198. Further, although Cuddy attempted to show that Daley was in fact not immediately available, that Cuddy's own experience was entirely transferable to the GSA operations, and that Daley's experience was actually less extensive than Cuddy's, this evidence was confused and far from convincing. It was not clear that Daley's continued participation in the 10/7 project after his selection actually kept him from full participation in his new duties; it may have been that his participation in the 10/7 project was in some manner part of those duties. In addition, no clear picture emerges of how the relative backgrounds of Cuddy and Daley actually prepared them for the job in question. Finally, the statements about age being a factor could be found to be either not very potent when taken in context or not directly relevant to what actually happened in this case. *See* Tr. at 227–229, 236; 580 F.Supp. at 792. In sum, we cannot say that the District Court's finding that Cuddy was rejected because of his inferior qualifications was clearly erroneous. It finds "substantial evidentiary support," *Morrisette, supra,* 475 F.2d at 1307, in the record, and we are not left with the firm conviction that it was incorrect.

2. *Apparently alternative finding that GSA acted in nondiscriminatory fashion because Cuddy's nonselection resulted from a bureaucratic foulup.* Given the ambiguous nature of Treichel's testimony regarding his consideration (or lack of consideration) of Cuddy's application, however, an inference contrary to that drawn to support the District Court's primary finding is also possible.

Specifically, one could also permissibly infer that Treichel, although he knew *informally* of Cuddy's application, never *officially* considered Cuddy for the position. From this, and from the other evidence regarding the official handling of Cuddy's application, one might permissibly infer that evidence existed in the record to support the conclusion that Cuddy was rejected because his application was prevented from being effectively considered by a bureaucratic foulup.

Based apparently on this inference, the District Court concluded, in an alternative finding to its main one discussed above, that judgment for GSA would be proper under this alternative scenario as well. Although not stated explicitly, the District Court apparently based this conclusion on a finding that a GSA bureaucratic error caused Cuddy's rejection.

To support the District Court's ultimate conclusion, however, the finding would have to include a finding that the error was nondiscriminatory.[13] But, in fact, no evidence was introduced as to the reasons for the delay in consideration of in-house candidates or the rejection of the CSC candidates prior to that consideration. Thus no affirmative evidence that the bureaucratic error was nondiscriminatory was present in the record.[14] Consequently, the alternative finding is clearly erroneous. Further, given that Cuddy, by making out a *prima facie* case of discrimination,[15] had created a presumption of discriminatory intent which was not rebutted by evidence of a legit-

---

**13.** As noted previously, the District Court's finding here that nothing indicated that the foulup was discriminatory is not a sufficient factual finding. *See* note 4 *supra.*

**14.** *Cf. Rowe, supra* note 12, 690 F.2d at 96–97 (noting that reason given by employer for refusal to rehire plaintiff—that employer's foreman did not want to rehire him—was inadequate to meet *McDonnell-Burdine* burden, as foreman's

inclination may have resulted from either discriminatory or nondiscriminatory motives).

**15.** As the District Court found here, Cuddy did present a *prima facie* case: (1) Cuddy was 64 years old in 1975; (2) he was qualified—as shown by his certification for the position by CSC, *see* Tr. at 172; (3) he was not hired; and (4) Daley, aged 37, was selected.

imate, nondiscriminatory reason, Cuddy would, under this alternative rationale, prevail on the ultimate question of discrimination.

■ Although we strongly deprecate use of alternative factual findings by a District Court and the underlying lack of clarity of the evidence presented here by GSA,[16] we do not believe that the evidence here was so unclear as to warrant a determination that Cuddy never had effective notice of GSA's articulated nondiscriminatory reason and of his obligation to show that it was pretextual. Nor, even given the somewhat ambiguous nature of the District Court's findings, are we firmly convinced that a mistake has been made. Consequently, we uphold the District Court's judgment for GSA.

### IV. CONCLUSION

The District Court in this case properly discerned and applied the governing legal standard. Further, we have reviewed the evidence and the District Court's findings of fact, and we are unable to say that they are clearly erroneous. Thus, we affirm the judgment in favor of GSA.

*Affirmed.*

---

**16.** In particular, we are troubled by the fact that the evidence in a sense presented Cuddy with two potential nondiscriminatory reasons to address. (This is true even though we have concluded after the fact that one had inadequate evidentiary support.) This presentation of alternative scenarios by a defendant is problematic because it could undermine the *McDonnell-Burdine* structure. As noted above, *see* note 12 *supra,* a major purpose of that structure is to enhance the plaintiff's ability to prove his or her case by requiring the defendant to provide an explanation of its action around which indirect proof of discrimination can center (proof of pretext). But if defendants may introduce alternative reasons, a plaintiff's ability to focus his or her proof is undermined, much as may occur if defendants are allowed to introduce hypothetical reasons.