Enid WEBER, Plaintiff,

v.

Peter HURTGEN, Chairman of the
National Labor Relations
Board, Defendant.

No. CIV. 01–862(RJL).

United States District Court,
District of Columbia.

Sept. 29, 2003.

Enid W. Weber, Fairfax, VA, Pro se.

Stratton C. Strand, U.S. Attorney's Office, Washington, DC, for Peter Hurgten.

## MEMORANDUM OPINION & ORDER

LEON, District Judge.

The plaintiff Enid Webber, who is proceeding *pro se*, alleges that she was subject to employment discrimination and retaliation within the meaning of the Equal Pay Act ("EPA") and Title VII of the Civil Rights Act while employed in the office of the Chairman [1] of the National Labor Relations Board ("NLRB").

Before the Court is a motion by the defendant to dismiss the plaintiff's EPA claims for lack of jurisdiction as well as cross-claims for summary judgment. Following consideration of the parties' submissions and the relevant law, the Court grants the defendant's motion to dismiss the claim brought pursuant to the EPA, transferring it to the Court of Federal Claims, and grants the defendant's motion for summary judgment on all Title VII claims, except those related to changes in work assignments, information access, and secretarial support.

### I. BACKGROUND

At the time the suit was filed, the plaintiff, a Hispanic woman who has been continually employed at the NLRB since 1971, was assigned to the Office of Executive Secretary to the former Chairman of the

---

1. Peter Hurtgen served as Chairman of the Board of the NLRB from May 2001 until his appointment by President Bush as Director of the Federal Mediation and Conciliation Service in July 2002. He was initially appointed a member of the NLRB by President Clinton in November 1997.

National Labor Relations Board ("the Chairman"). Compl. ¶ 123. The plaintiff has held the position of Associate Executive Secretary to the Chairman since 1989. Webber Aff. at 5.

The plaintiff has had a long history of employment-related disputes with the NLRB. In April of 1980 the plaintiff filed Equal Pay Act ("EPA") and Title VII claims alleging that she had not received pay equal to that of her male counterparts. Compl. ¶¶ 82–89. The Equal Employment Opportunity Commission ("EEOC") found that the NLRB was, in fact, in violation of the EPA. *Id.* ¶ 86. After eleven years a resolution and informal order were instituted, ordering the NRLB to settle the pending EPA and Title VII cases. *Id.* ¶¶ 90–91. In August 1997, the plaintiff sought counseling for her EPA and Title VII claims with the NLRB's Office of Equal Opportunity ("OEO"). Def.'s Mot. for Summ. J. at 2.

According to the plaintiff, shortly thereafter, in December of that year, the Chairman took away her responsibility of assigning work to the support staff and secretarial support. Pl.'s Mot. for Summ. J. at 6. Her performance evaluation from that time included comments about her uncooperativeness and lack of communication skills. *Id.* at 6. In the ensuing years at the NLRB, the plaintiff argues that she was treated in various discriminatory ways. For example, according to the plaintiff, she was "detailed" as Special Assistant to the Chairman in April of 1998, but paid at a lower level than past individuals who had held that position, all white males. *Id.* at 7. Also, her requests for information were not fully complied with; she was denied access to various duties, offices, and meetings; and was forced to take a "remedial team playing course." *Id.* at 7.

The plaintiff filed a formal complaint with the EEOC office on January 22, 1999. *Id.* at 7. About four weeks later a white male, Mr. Lester Heltzer, was appointed Acting Deputy Executive Secretary. *Id.* at 7. In February, Hollace Enoch, an employee with less seniority was given a larger office than the plaintiff and in May the plaintiff was relieved from her duties of handling oral arguments. *Id.* at 7–8.

The plaintiff filed this action on April 19, 2001, arguing that her rights under the EPA were violated when, because of her gender, she was denied equal pay for equal work from April 21, 1995, to April 20, 1998, and from April 21, 1998, to September 21, 1998. Compl. ¶¶ 13–14. In addition, the plaintiff brought suit under Title VII for various alleged acts of discrimination based on the plaintiff's sex and national origin and for the employer's alleged acts of retaliation due to the plaintiff's current and past complaints. The Title VII claims allege that the defendant took the following actions because of discrimination or retaliation: failure to promote or select the plaintiff for various positions; failure to allow plaintiff to have secretarial support; denial of plaintiff's access to employees; denial of information to plaintiff; removal of certain duties from plaintiff; a requirement that plaintiff attend a training course; relocation of plaintiff move from a two to one window office; and inaccurate 1997 and 1998 performance appraisals. *Id.* ¶¶ 15–34.

On September 14, 2001, the defendant responded to the plaintiff's complaint with a motion to dismiss or, in the alternative, for summary judgment. On September 18, 2001, the plaintiff submitted a motion for summary judgment. An initial status conference was held before this Court on May 29, 2002, and the motions to dismiss and summary judgment were taken under advisement.

## II. DISCUSSION

### A. The Equal Pay Act Claims

■ The plaintiff contends that her employer, the NLRB violated the EPA when, because of her sex, the NLRB failed to give her equal pay for equal work from April 21, 1995, to April 20, 1998, and from April 21, 1998, to September 21, 1998. Compl. ¶¶ 13–14. The defendant argues, however, that this Court lacks subject matter jurisdiction over EPA claims in excess of $10,000. The Court agrees and, accordingly, transfers the plaintiff's EPA claim to the Court of Federal Claims.

The Equal Pay Act provides that employers may not discriminate between male and female employees by paying one sex "at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility ...." 29 U.S.C. § 206(d)(1) (2003).

Because the EPA does not contain a specific jurisdictional grant, the jurisdiction of the plaintiff's EPA claims are subject to the Tucker Act, 28 U.S.C. § 1491(a)(1) (2003), and to the "Little Tucker Act," 28 U.S.C. § 1346(a)(2) (2003). The former, regarding claims against the United States, declares that the Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States found either upon the Constitution, or any Act of Congress ... not sounding in tort." 28 U.S.C. § 1491(a)(1) (2003). The latter furnishes more specific guidelines, providing that the district courts shall have concurrent jurisdiction with the United States Court of Federal Claims ("Court of Federal Claims") over civil actions against the United States, "*not exceeding $10,000 in amount,* founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department ...." 28 U.S.C. § 1346(a)(2) (2003) (emphasis added); *see also Johnson v. Stone* Civ. A. No. 9202461 (D.D.C. May 13, 1993) ("The Court does not have subject matter jurisdiction over the plaintiff's Equal Pay Act claims because they involve claims against the United States exceeding $10,000 ...."); *Doe v. Dep't of Justice,* 753 F.2d 1092, 1101 (D.C.Cir.1985) ("Jurisdiction for those monetary claims against the United States exceeding $10,000 lies exclusively with the Claims Court.").

■ The plaintiff's request for compensatory or liquidated damages, as well as back pay, bonuses, and interest for performance of duties and responsibilities of two NLRB positions, greatly exceeds $10,000. *See* Compl. ¶¶ 1–3. In light of these damages, the Court lacks jurisdiction and transfers the EPA claim to the Court of Federal Claims. *See, e.g., De Leon v. England,* 2003 WL 21767504 *2 (D.D.C. 2003).[2]

### B. Title VII Claims

#### 1. Standard of Review

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking

---

2. The EPA claims may not be brought before the District Court via pendent jurisdiction. Noting that the United States is immune to suits without express consent, the Tenth, Fifth and Sixth Circuits have held that claims under the Tucker Act for more than $10,000 are within the exclusive jurisdiction of the Court of Federal Claims and those parameters cannot be expanded to allow suit in the District Court through pendent jurisdiction. *McKay v. United States,* 703 F.2d 464 (1983); *Ware v. United States,* 626 F.2d 1278, 1287 (5th Cir. 1980); *Lenoir v. Porters Creek Watershed District,* 586 F.2d 1081, 1087 (6th Cir.1978).

summary judgment may support its motion by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). In opposing summary judgment, the "nonmoving party [must] go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(c), (e)). In determining whether a genuine issue of material fact is in dispute, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### 2. McDonnell Douglas *Test*

In the case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established a three-step summary-judgment process in employment discrimination cases ("McDonnell Douglas test"). The plaintiff must first establish a prima facie case by demonstrating that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C.Cir.1999).

■ If the plaintiff demonstrates a prima facie case, the burden shifts to the defendant who must articulate a legitimate, non-discriminatory explanation for the disputed activity. *McDonnell*, 411 U.S. at 802, 93 S.Ct. 1817. This burden is one of production, not persuasion, so the defendant need only produce evidence regarding his allegedly lawful treatment of the plaintiff. *Cuddy v. Carmen*, 762 F.2d 119, 122 (D.C.Cir.1985).

■ Finally, if the employer successfully meets his burden of persuasion, the burden then returns to the plaintiff who has the opportunity to argue that the employer's stated reason was a pretext for discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (explaining that the plaintiff must demonstrate that the "proffered reason was not the true reason for the employment decision, and that race or some other discriminatory basis was"). Specifically, the plaintiff carries a burden of persuasion as she must show it to be more likely than not that the employer's actions were motivated by discrimination. *Cuddy*, 762 F.2d at 123. The Court must focus on "whether the jury could infer discrimination." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C.Cir. 1998) (en banc).

■ The burden shifting process for establishing a valid claim of retaliation is similar to that of discrimination. The plaintiff must prove that she engaged in a statutorily protected activity. *Brown*, 199 F.3d at 452. As with accusations of discrimination, the employer must have taken some form of adverse action against her, and there must be a causal connection between the protected activity and the adverse action. *Id.*

### 3. Work Performance Evaluations

■ The plaintiff argues that the NLRB acted in a discriminatory and retaliatory manner in evaluating her work performance in 1997 and in 1998. Compl.

¶¶ 31, 37. However, the NLRB's actions, even if unfavorable, were not sufficiently adverse to establish a prima facie case of discrimination.

In *Brown*, an employee brought a Title VII claim against her employer, alleging that she was the victim of an adverse employment action because of a "fully satisfactory" performance evaluation. 199 F.3d at 458. In response, the court generally held that, evaluations, including formal criticism or poor performance evaluations, are not adverse employment actions: a "thick body of precedent ... refutes the notion that formal criticism or poor performance evaluations are necessarily adverse actions." *Id.* at 458. In particular, the rating was not found to be an adverse action because it did not impact the plaintiff's grade or salary. *Id.* at 458; *see also Russell v. Principi*, 257 F.3d 815, 818 (D.C.Cir.2001) (noting that unlike the impact of bonuses, the impact of performance evaluations are too speculative to constitute an adverse action).

Here, the plaintiff asserts that her 1997 performance appraisal "did not provided [sic] for a completed rating of record, and ... denied a performance award, and thereafter, failed to respond to the timely filed motion for reconsideration." *Id.* at 5. Yet, it is undisputed that the plaintiff was given eighty hours off as a Special Act Award, and other, similarly situated employees received time off for their Performance Awards. Pl's Reply to Def.'s Reply to Pl's Opp'n to Def.s' Mot. To Dismiss or, in the Alternative, for Summ. J. at 17. In substance the two awards granted the workers the same time-off benefit and differed only in name. Thus, like in *Brown*, the plaintiff did not have her grade or salary impacted because in 1997 she, like the other employees, was given time off. While the plaintiff's time-off award was in the form of a Special Act Award, rather than Performance Award, under *Brown* this difference in name is not significant as it does not impact pay grade or salary. As such, there is no adverse action present and the plaintiff's claims of discrimination and retaliation regarding her 1997 performance evaluation fail.

The plaintiff's 1998 work performance evaluation was also *not* an adverse action and, therefore, was not discriminatory or retaliatory within the meaning of Title VII. The plaintiff's 1998 performance appraisal was "commendable" rather than the higher rating of "outstanding," with no performance award given. Like the non-adverse "fully satisfactory" rating of *Brown*, the plaintiff's 1998 evaluation was not "adverse in an absolute sense": "[t]wo of her four critical elements were rated Outstanding; one was rated Commendable; and one, Fully Successful." Pl.'s Mot. for Summ. J. at 32. If the D.C. Circuit found that "satisfactory" is an overall good rating in *Brown*, 199 F.3d at 458, it is equally true that the "commendable" rating received by the plaintiff is not adverse. Moreover, while the plaintiff received no bonus or time off in 1998, her salary and grade were not impacted by her performance evaluation of that year.[3]

The plaintiff further complains that no substantive explanation was given for that 1998 rating beyond her employer's contention that she simply did not deserve such an award, Pl.'s Opp'n to Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. at 14, but this lack of an explanation is not sufficient to constitute an adverse ac-

---

3. Even if the evaluation were adverse, the plaintiff was not treated differently because a similarly situated co-worker, an employee at the NLRB's Solicitor's Office at the same GS level, received the same evaluation rating. Def.'s Reply to Pl's Opp'n to Def.s' Mot. to Dismiss or, in the Alternative, for Summ. J. at 4.

tion. In *Freedman*, the plaintiff filed a claim of employment discrimination under Title VII and argued that he did not receive adequate guidance or feedback about his performance when it was reviewed by his supervisor. 255 F.3d at 848. The court held that the limited feedback sessions were not discriminatory changes in the terms or conditions of the plaintiff's job: "even if Freedman's evaluations were less complete than those given his coworkers, those deficiencies could not constitute a sufficient change in the terms and conditions of his employment to support a claim." *Id.*

Thus, like *Freedman*, the NLRB's lack of explanation for denying the plaintiff's Performance Award in 1998 does not create an actionable claim of adversity. This, coupled with the similarly situated employee who received the same evaluation as the plaintiff and the overall non-adverse nature of the plaintiff's commendable award, causes the plaintiff's discrimination and retaliation claims to fail.[4]

### 4. Executive Assistant to the Chairman

█ The plaintiff states that she was denied the position of Executive Assistant to the Chairman ("Assistant Chairman") because of her national origin, sex, and involvement in protected acts. Compl. ¶ 32. The defendant contends that denial of the Assistant Chairman position is not an adverse action as the plaintiff "would

have remained at precisely the same GS-level and not received any promotion or additional compensation." Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. at 31. The Court agrees. The plaintiff's denial of employment as Executive Assistant to the Chairman ("Assistant Chairman") was not the result of an adverse act and thus is not discriminatory or retaliatory within the meaning of Title VII.

According to the plaintiff, the Assistant Chairman position would have given the plaintiff a more prestigious title, greater exposure, and more opportunity for future advancement. Pl.'s Resp. to Def.'s Supplemental Br. at 14–15. While denial of a promotion can be grounds for an adverse action, it is usually not the case for lateral transfers. *See Freedman*, 255 F.3d at 844 (noting that *Brown* held that a "purely lateral transfer was not, in itself, an adverse employment action *unless* there are some other materially adverse consequences affecting the terms, conditions, or privileges of [the plaintiff's] employment ..." (quoting *Brown*, 199 F.3d at 457)).

Here, the plaintiff's failure to be selected for a lateral transfer is not an adverse action. The plaintiff would have been transferred from one GS–15 position to another,[5] and thus would not have experienced a salary increase. The plaintiff also argues that the new position would have been more "prestigious," but the D.C. Circuit has explicitly found that loss of "reputation" and the loss of "prestige" are not

---

4. For both the 1997 and 1998 evaluations, the plaintiff also alleges that she made motions for reconsideration and that they were not responded to in a timely fashion. Pl.'s Opp'n to Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. at 14. According to the plaintiff, a white male employee who made such a request was responded to immediately and his request was granted. *Id.* at 14. That the white male's request was granted and the plaintiff's is not irrelevant because, as the aforementioned precedent reflects, the plain-

tiff's negative evaluations alone are simply not adverse actions.

5. The plaintiff contends that her original position at the time was an "incumbency only" position and thus not fully compensated at a GS–15 level. However, she cites no evidence of compensation disparity, and in any event, the new position she sought was a temporary position.

injuries that constitute adverse actions. *Forkkio v. Powell,* 306 F.3d 1127, 1130–31 (D.C.Cir.2002).

### 5. Acting Deputy Executive Secretary

■ The plaintiff's denial of employment as acting Deputy Executive Secretary ("acting Deputy") did not result from an adverse act within the meaning of Title VII because the plaintiff did not have opportunity to compete for this position in the first place. Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. at 32. It is undisputed that the NLRB has the discretion to hire for this position competitively or through reassignment of a current SES employee and that the NLRB chose the latter approach. Lovell Aff. ¶¶ 4–6; Truesdale Aff. at 3. Since the NLRB chose not to hire competitively, the plaintiff was not even eligible and thus did not experience an adverse action.

Even if the failure to select the plaintiff was an adverse action, the plaintiff has provided no evidence to refute the defendant's legitimate, nondiscriminatory reasons for not selecting her. *See Fischbach v. District of Columbia Dep't of Corrections,* 86 F.3d 1180, 1183 (D.C.Cir.1996) ("[W]hen an employer makes a hiring decision, short of finding that the employer's stated reason was indeed a pretext the fact finder must respect the employer's unfettered discretion to choose among qualified candidates."). The defendant chose not hire her for the acting Deputy position because it wanted to fill the position through the lateral assignment of a current SES employee who had more experience than the plaintiff, rather than promoting an employee, such as the plaintiff, who is from a GS-level position and, therefore, had less seniority and experience. Truesdale Aff. at 7; Toner Aff. ¶ 31. The defendant has proffered no convincing evidence to demonstrate that these legitimate reasons for hiring the SES candidate with more experience were mere pretext.

### 6. Permanent Deputy Executive Secretary

■ The plaintiff has failed to exhaust her administrative remedies regarding the position of permanent Deputy Executive Secretary ("permanent Deputy") and, therefore, her claims regarding that position should be dismissed. Compl. ¶ 36. Title VII states that the EEOC requires one who believes that she has been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap, to exhaust the Commission's administrative remedies prior to pursuing the matter in a court of law. 42 U.S.C. § 2000e (2003); *see also Bowden v. United States,* 106 F.3d 433, 437 (D.C.Cir.1997) ("EEOC has established detailed procedures for the administrative resolution of discrimination complaints .... Complaints must timely exhaust these administrative remedies before bringing their claims to court."). Regulations in 29 CFR 1614.105 set out these requisite remedial steps, including mandatory sessions with a Commission counselor about the specific discriminatory issue. 29 CFR 1614.105(a) (2003) ("Aggrieved persons who believe they have been discriminated against ... must consult a Counselor prior to filing a complaint in order to informally resolve the matter.").

The Supreme Court recently declared that when one files a claim against an employer with the EEOC under Title VII, each allegedly discriminatory practice is discrete for the purposes of the administrative steps involved with such a claim. *Nat'l. R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 111, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) ("We have repeatedly interpreted the term 'practice' to apply to a discrete act or single 'occurrence,' even

when it has a connection to other acts."). So, while the events surrounding Heltzer's assignment to the positions of acting Deputy and then permanent Deputy may be closely linked, they remain distinct from one another, each required to undergo the EEOC process.

The plaintiff failed to discuss her discrimination allegations regarding the permanent Deputy position during her informal counseling session and, instead, filed a formal administrative complaint. Def.'s Mot. to Supplement his Mot. to Dismiss at 2–3. Ex. 1 EEOC Counselor's Report. Consequently, the plaintiff bypassed a part of the mandatory EEOC process and did not exhaust her administrative remedies for the permanent position.

### 7. Senior Associate Executive Secretary

██ The defendant's decision to deny the plaintiff the position of Senior Associate Executive Secretary ("Senior Associate") was not an adverse action and, therefore, not discriminatory or retaliatory within the meaning of Title VII. Compl. ¶ 17. Simply put, no such job position formally exists at the NLRB: "Senior" is often tacked on to the Associate Executive Secretary title for casual, unofficial reference purposes. Toner Aff. at 4–5; see also Truesdale Aff. at 5. This conclusion is bolstered by the fact that no employee is the recipient of additional compensation or benefits because of his senior AES position: "In terms of grades and benefits, there are no longer any distinctions between the positions held by the three Associate Executive Secretaries." Toner Aff. at 5.

At most, the person who is referred to as "senior" is generally designated a larger office space, Toner Aff. at 4–6, which does not qualify as an adverse action. Office space has been considered in assessing adverse treatment in the Seventh Circuit, but was one of many factors, implying that on its own, it would not suffice to support a claim of adverse treatment. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996) (citing *Collins v. State of Illinois*, 830 F.2d 692, 703 (7th Cir.1987)).

In sum, the plaintiff retaliation and discrimination claims concern a job position not distinct from her own and even if it did, it would only accord her the benefit of a larger office, denial of which does not qualify as an adverse action.

### 8. Denial of Information Requests

██ The plaintiff's information request claims may be disposed of because they are not adverse actions. Compl. ¶¶ 16, 18. These claims fail under Title VII because denial of information does not amount to adverse treatment. *See, e.g., Newkirk v. AAA Chicago Motor Club*, 2003 WL 21518546, *6, 2003 U.S. Dist. LEXIS 11227, *17 (N.D.Ill.2003) ("A mere failure to provide information without any loss of actual or potential benefit simply does not constitute an adverse employment action under the law."). So, in sum, the plaintiff's Title VII and EPA claims regarding information deprivation fail as there was no adverse action.

### 9. The Plaintiff's Five Claims Concerning Her Treatment "On The Job"

The defendant contends that the plaintiff's claims concerning her treatment while on the job fail to establish a case of discrimination and retaliation because they are not adverse actions. These claims include denial of access to employees, Compl. ¶ 20, restriction of information made available to her, Compl. ¶ 29, relocation to an office with one less window, Compl. ¶ 34, removal of privilege to assign

secretarial work, Compl. ¶ 14, and removal of certain job duties, Compl. ¶¶ 21–28.[6]

Precedent dictates that changes at work must be striking to satisfy a prima facie case of discrimination. *See Forkkio*, 306 F.3d at 1131; *see also Flaherty v. Gas Research Institute*, 31 F.3d 451, 457 (7th Cir.1994) (stating that personal humiliation and a bruised ego does not suffice as an actionable adverse action); *Smart*, 89 F.3d at 441 (stating that not all which makes an employee unhappy is necessarily an actionable adverse action). While actions less quantifiable than fiscal injuries can constitute adverse actions, *Freedman*, 255 F.3d at 844; *Smart*, 89 F.3d at 441, such actions must be "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm," *Forkkio*, 306 F.3d at 1131 (citing *Brown*, 199 F.3d at 457).

Here, a reasonable jury could not find that the plaintiff's change in office, even in Washington, rises to a level of tangible harm. While the plaintiff in *Smart* endured adverse treatment with her change in offices, that change was significantly more drastic than the plaintiff's relocation. In *Smart*, the plaintiff had her office removed entirely and was assigned to a desk outside her supervisor's office, where a receptionist would normally sit. *Smart*, 89 F.3d at 441 (*quoting Col-*

lins v. State of Illinois, 830 F.2d 692, 703 (7th Cir.1987)). The plaintiff here was merely assigned to an office with one less window.[7]

It is less clear, however, whether or not plaintiff's claims regarding access to certain information, changes in work assignments, and removal of ability to assign tasks to secretaries are "materially adverse consequences." *Brown*, 199 F.3d at 457. The D.C. Circuit stated that "changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes." *Mungin v. Katten et al.*, 116 F.3d 1549, 1557 (D.C.Cir.1997); *see also Forkkio*, 306 F.3d at 1131.

Yet, these cases address situations where specific duties were changed on a temporary basis, whereas the plaintiff in the case at bar had her duties changed on a seemingly permanent basis. Moreover, adverse treatment has been found when responsibilities have been significantly diminished, such as termination of supervisory authority over other employees, even when not coupled with a decrease in financial benefits. *See Smith v. O'Neill*, 277 F.Supp.2d 12, 18 (D.D.C.2003) ("[A] pattern of consistent assignments to support staff duties, rather than professional level duties, because of race or color could be adverse."); *Dahm v. Flynn*, 60 F.3d 253, 257 (7th Cir.1994) ("[A] dramatic down-

6. The plaintiff also asserts that she was subject to adverse treatment when required to attend a training course. Compl. ¶ 30. This court has found that *denial* of attendance to training may be actionable under Title VII, but no mention has been made of the inverse situation. *Freedman*, 255 F.3d at 845. A requirement to attend a course is not sufficiently adverse because any such requirement is intended to benefit the employee by providing the employee with more skills and knowledge to facilitate job responsibilities.

7. It is also noteworthy that the employee given the office with the additional window over the plaintiff in the case at bar was Hollace Enoch, an African American woman. Pl. Mot. for Summ. J. at 8; Def.'s Reply to Pl's Opp'n to Def.s' Mot. To Dismiss or, in the alternative, for Summ. J. at 7, n. 3. As such, it is nonsensical to attribute the plaintiff's deprivation of that office to her race and/or sex.

ward shift in skill level required to perform job responsibilities can rise to the level of an adverse employment action."). The parties do not dispute that the plaintiff had the following duties taken from her: " 'walking around' of cases to Board Members for the purpose of obtaining and/or negotiating resolution resulting in issuance; preparation of significant case processing lists; providing assistance to any entity studying the Board's case processing; handling of letters pertaining to stipulated records; and handling of procedural representation matters." These changes in work assignments and secretarial support, and the downsizing of responsibilities that ensued, could be characterized by a reasonable jury as sufficiently pervasive to constitute adverse actions.

Once the plaintiff establishes a prima facie case of discrimination, the defendant then has the opportunity to proffer a legitimate reason for the adverse actions in question. *McDonnell Douglas, Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The defendant, however, did not do so in its pleadings. Accordingly, for these reasons, the Court: (1) denies the defendant's summary judgment motion as it relates to the change in the plaintiff's work arrangements and secretarial support; and (2) invites the defendant to file a renewed motion for summary judgment on the specific issue of whether the defendant had legitimate, nondiscriminatory reasons for the multitude of changes in the plaintiff's work assignments, reduction in access to information, and removal of secretarial support.

## III. ORDER

For the foregoing reasons, it is on this 29th day of September, 2003, hereby ORDERED that the defendant's motion to dismiss [# 9–1] is GRANTED in part;

ORDERED that the plaintiff's EPA claims are transferred to the Court of Federal Claims;

ORDERED that the defendant's motion for summary judgment [# 9–2] is GRANTED in part and DENIED in part;

ORDERED that the plaintiff's motion for summary judgment [# 10–1] is DENIED;

ORDERED that the defendant may file a renewed motion for summary judgment by October 30, 2003, on the issue of whether the defendant had a legitimate, nondiscriminatory reason for changing the plaintiff's work assignments and removing secretarial support;

ORDERED that, if the defendant files a renewed motion for summary judgment, then the plaintiff may file an opposition by November 10, 2003, and the defendant may file a reply by November 17, 2003;

ORDERED that the defendant's motion for leave to file a supplement to his motion to dismiss or, in the alternative, for summary judgment [# 41–1] is GRANTED nunc pro tunc;

SO ORDERED.