Ida J. TAYLOR, Iris Taylor, Tracy Taylor, by and through her Guardian ad Litem, Ida J. Taylor, Plaintiffs-Appellees,

v.

UNITED STATES of America (Department of the Army Letterman Army Medical Center), Defendant-Appellant,

California Medical Association and California Association of Hospitals and Health Systems, Amici Curiae.

No. 86–2025.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1987.

Decided July 16, 1987.

Irene M. Solet, Washington, D.C., for defendant-appellant.

Walter H. Walker, III, San Francisco, Cal., for plaintiffs-appellees.

**1430**

Frederic D. Cohen and S. Thomas Todd, Encino, Cal., for amici curiae.

Before GOODWIN, BEEZER and THOMPSON, Circuit Judges.

BEEZER, Circuit Judge:

The United States appeals from judgment awarding Ida Taylor $500,000 in damages for loss of consortium and emotional distress. Taylor's husband sustained permanent brain damage while receiving medical treatment at Letterman Army Hospital. California Civil Code § 3333.2, as incorporated by the Federal Tort Claims Act, limits recovery for noneconomic injuries in actions based on professional negligence to $250,000. Because the underlying injuries to Taylor's husband occurred in the hospital and during the course of medical treatment, we reverse the judgment and remand with directions to reduce noneconomic damages awarded to Taylor in accordance with § 3333.2.

## I  Background

Taylor's husband suffers from amyotrophic lateral sclerosis, or Lou Gehrig's Disease. In July of 1982, Taylor's husband was hospitalized at Letterman Army Hospital for treatment of pneumonia. He depended completely on a ventilator for oxygen. For reasons not part of the record, Taylor's husband became disconnected from the ventilator. As a result of oxygen deprivation, Taylor's husband suffered severe and irreparable brain damage. Taylor herself was present when her husband became disconnected from his ventilator and witnessed efforts to revive him.

The government stipulated to liability for the incident. The only issues at trial were damages for each of Taylor's claims. The district court awarded Taylor $400,000 for loss of consortium and $100,000 for negli-

gent infliction of emotional distress (*"Dillon v. Legg"* [68 Cal.2d 728; 69 Cal.Rptr. 72, 441 P.2d 912 (1968)] claim). The government moved, pursuant to Federal Rules of Civil Procedure 59(a), 59(e) and 60(b), for reduction in damages to $250,000 under California Civil Code § 3333.2 ("§ 3333.2"). The district court concluded that Taylor's claims were based on ordinary "common law" negligence rather than professional negligence, and that § 3333.2 did not apply.

Taylor claims that the government waived the protection of § 3333.2 by failing to raise the issue before judgment. The government denies waiver. The government argues that Taylor's claims are necessarily predicated on professional, not ordinary common law negligence, and that § 3333.2 applies. In the alternative, the government claims that damages awarded Taylor were excessive and warrant reduction. The California Medical Association and the California Association of Hospital and Health Systems filed an amicus brief in support of the government.

## II  Discussion

### A.  *Applicability of California Civil Code § 3333.2*

■ The Federal Tort Claims Act ("FTCA") provides that the government "shall be liable ... in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674. Liability is to be determined "in accordance with the law of the place where the [negligent] act or omission occurred." 28 U.S.C. § 1346. In this case, the negligent act occurred in California. Accordingly, California law determines the nature and extent of the government's liability for Taylor's injuries. *See Shaw v. United States*, 741 F.2d 1202, 1205 (9th Cir.1984). Whether § 3333.2 limits noneconomic damages recoverable by Taylor is a question of law, which this Court reviews *de novo*.[1]

---

1. Taylor argues for application of the abuse of discretion standard of review, because the government appeals from denial of post trial relief. However, a district court's discretion

regarding post-trial motions does not extend to commission of errors of law. *Shakey's, Inc. v. Covalt,* 704 F.2d 426, 437 (9th Cir.1983). The

California enacted § 3333.2 as part of the Medical Injury Compensation Reform Act ("MICRA") in 1975. Section 3333.2 provides, in part

(a) In any action for injury against a health care provider based on professional negligence, the injured plaintiff shall be entitled to recover noneconomic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage.

(b) In no action shall the amount of damages for noneconomic losses exceed two hundred fifty thousand dollars ($250,000).

■ Taylor claims that § 3333.2 does not apply to her action because 1) the United States is not a health care provider within the meaning of § 3333.2(c)(1), and 2) her claim is based on ordinary "garden-variety" negligence, not on professional negligence, as required by § 3333.2(c)(2).[2]

### 1. Section 3333.2 Applies To Actions Against The United States

■ Section 3333.2 applies to "any action for injury against a health care provider." Cal.Civ.Code § 3333.2(a). Subsection (c)(1) defines "health care provider" as any person, clinic, health dispensary, or health facility licensed by the State. Taylor claims that the United States is not a health care provider because the United States is not licensed by California to operate Letterman Army Hospital.

In *Hoffman v. United States*, this Court held § 3333.2 constitutional as applied in suits against the United States for professional negligence. 767 F.2d 1431 (9th Cir.

1985). This Court reversed the district court judgment and remanded with directions "to amend the judgment to limit the noneconomic damages to $250,000." *Id.* at 1437. *Hoffman* assumed without discussion that § 3333.2 applies to actions brought against the United States for professional negligence. We hold that § 3333.2 applies to such actions.

Other circuits considering this question have concluded that liability limitations similar to § 3333.2 apply to the United States, even though the statutes purport to apply only to state-licensed health care providers. *See Lucas v. United States*, 807 F.2d 414, 417 (5th Cir.1986); *see also Scheib v. Florida Sanitarium and Benevolent Association*, 759 F.2d 859, 863–64 (11th Cir.1985).

Private hospitals in California must be licensed under Division 2 of the California Health and Safety Code. Physicians must be licensed under provisions of the Health and Safety or Business and Professions Code. Had Taylor's husband suffered identical injuries while under the care of a private institution in California, § 3333.2 would limit recovery for noneconomic damages to $250,000.

The only reason that Letterman Army Hospital and its staff are not licensed under California law is that California lacks power to require licensing of federal health care providers and physicians. The United States has, by virtue of the Supremacy Clause (Article VI, clause 2), essentially deemed Letterman Army Hospital and its staff fit to provide health care services in

---

operative standard of review for whether § 3333.2 applies is *de novo*.

**2.** Neither the parties nor the district court discuss whether § 3333.2 applies to actions for noneconomic damages brought by persons other than *primary* victims of professional negligence. No court has decided the question. However, the California Supreme Court has held that MICRA's statute of limitations (Cal. Code Civ.Proc. § 340.5) applies to actions brought by relatives of malpractice victims for emotional distress. *Hedlund v. Superior Court*, 34 Cal.3d 695, 705, 194 Cal.Rptr. 805, 810, 669 P.2d 41 (1983) (victim's son filed timely action under Cal.Code Civ.Proc. § 340.5).

Like § 3333.2, Cal.Code Civ.Proc. § 340.5 applies to "action[s] ... against a health care provider based upon ... professional negligence." Cal.Code Civ.Proc. § 340.5. Application of § 3333.2 to actions such as Taylor's furthers the California legislature's purpose of controlling liability associated with medical malpractice. *See Fein v. Permenente Medical Group*, 38 Cal.3d 137, 158–59, 211 Cal.Rptr. 368, 383, 695 P.2d 665, *appeal dismissed*, —— U.S. ——, 106 S.Ct. 214, 88 L.Ed.2d 215 (1985). Accordingly, we hold that actions "based on professional negligence" include actions brought by relatives of the primary victim for emotional distress and loss of consortium for purposes of § 3333.2.

California. *See Lucas*, 807 F.2d at 417; *see* 50 U.S.C.App. § 454e (providing for volunteer service of physicians and dentists); *see also Sperry v. Florida ex rel. Florida Bar*, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963) (Federal law authorizing practice before United States Patent Office preempts state requirement of membership in state bar); *Gibbons v. Ogden*, 22 U.S. (9 Wheat) 1, 6 L.Ed. 23 (1824); *United States v. Composite State Board of Medical Examiners*, 656 F.2d 131, 135 & n. 4 (5th Cir.1981). To hold that § 3333.2 does not apply to the United States because the United States is exempt from state licensing requirements would contravene Congress' directive that the United States "shall be liable ... in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674. Accordingly, § 3333.2 applies to Taylor's action against the United States for damages arising out of negligent treatment of her husband.

### 2. Taylor's Action Necessarily Arises Out Of Professional Negligence

■ Section 3333.2 defines professional negligence as

> a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, ... for which the provider is licensed....

The same definition appears in the statute of limitations provision governing actions for medical malpractice. Cal.Code Civ.Proc. § 340.5. Under § 340.5, "professional negligence" includes "negligent act[s] occurr[ing] in the rendering of services for which the health care provider is licensed," irrespective of the level of skill required in the situation resulting in injury. *Murillo v. Good Samaritan Hospital*, 99 Cal.App.3d 50, 57, 160 Cal.Rptr. 33, 37 (1979).

In *Murillo*, the California Court of Appeals held that "a hospital has a duty 'to use reasonable care and diligence in safeguarding a patient committed to its charge ... and such care and diligence are mea-

sured by the capacity of the patient to care for himself.' " *Id.* (quoting *Thomas v. Seaside Memorial Hospital*, 80 Cal.App.2d 841, 847, 183 P.2d 288, 292 (1947)). Plaintiff in *Murillo* claimed that hospital personnel negligently failed to raise bedrails on her bed, and that she fell out of bed and was injured as a result. The court concluded that a hospital's negligent failure to correct unsafe conditions in the hospital constitutes professional negligence. *Id.* 160 Cal.Rptr. at 37 ("if an unsafe condition of the hospital's premises causes injury to a patient, as a result of the hospital's negligence, there is a breach of the hospital's duty qua hospital.")

There is little evidence concerning the reason that Taylor's husband's ventilator became disconnected. However, Taylor's husband was under the care of government physicians at the time of the incident, the injury occurred in the hospital, and the injury was caused by removal of medical equipment integral to treatment. Finally, treatment for pneumonia is the sort of care which a private hospital in like circumstances would be licensed to provide.

The government had a professional duty to prevent Taylor's husband from becoming separated from his ventilator, regardless of whether separation was caused by the ill-considered decision of a physician or the accidental bump of a janitor's broom. Civil Code § 3333.2 applies to this case.

### B. *Waiver of Damages Limitation Under § 3333.2*

■ Taylor claims that the government waived protection afforded by § 3333.2 by failing to raise the issue before judgment. Although state substantive law governs in suits brought under the FTCA, Federal Rules of Civil Procedure determine the manner and time in which defenses may be raised and when waiver occurs. *See Perry v. O'Donnell*, 749 F.2d 1346, 1353 (9th Cir. 1984). Federal Rule of Civil Procedure 8(c) requires defendants to plead affirmative defenses in answer to plaintiff's complaint. Defenses not so raised are waived. *Perry*, 749 F.2d at 1353; *see In re Allustiarte*, 786 F.2d 910, 914 (9th Cir.1986), *cert. denied,*

— U.S. ——, 107 S.Ct. 169, 93 L.Ed.2d 107 (1987).

Whether § 3333.2 is an affirmative defense is a question of state law. *See Troxler v. Owens-Illinois Inc.*, 717 F.2d 530, 532 (11th Cir.1983) (nature of defenses in diversity suit determined by state law). Our analysis indicates that § 3333.2 is a limitation of damages rather than an affirmative defense.

■ In *Pressler v. Irvine Drugs, Inc.*, the California Court of Appeal referred to the damage limitation of § 3333.2 as an affirmative defense. 169 Cal.App.3d 1244, 1248, 215 Cal.Rptr. 807, 809–10 (1985). Rulings of intermediate state courts are not necessarily conclusive where federal courts apply federal statutes, and state law pertains only to an underlying issue. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). Whether waiver occurred is a question of federal law under the Federal Rules of Civil Procedure. In addition, jurisdiction derives from the FTCA. The extent of the government's liability is a matter of federal law (28 U.S.C. §§ 1346(b), 2674), albeit determined according to state standards. The *Pressler* court's characterization of § 3333.2 as an affirmative defense does not bind this Court.

■ Section 3333.2 is a limitation of liability, not an affirmative defense. Unlike affirmative defenses listed in Fed.R.Civ. Proc. 8(c), § 3333.2 limits, but does not bar recovery for noneconomic damages. If the Federal Rules do not require plaintiffs to plead the extent of damages sought, defendants should not be required to plead the limitation of damages prescribed by § 3333.2. A contrary characterization of § 3333.2 would require defendants to anticipate an award of noneconomic damages in excess of $250,000—a requirement which is unrealistic and inconsistent with the practical notions underlying notice pleading. *See* Fed.R.Civ. Proc. 8(e), 8(f).

Furthermore, Rule 8(d) specifies that averments as to the *amount* of damage which defendant does not deny in his answer are not deemed admitted. This provision indicates that the Federal Rules do not consider limitations of damages affirmative defenses, which, by contrast, must be pleaded. Accordingly, the government was not required to raise § 3333.2 in its answer.

■ We recognize, however, that application of § 3333.2 may in some instances require resolution of factual issues.[3] In such cases, plaintiffs may be prejudiced if defendants do not raise § 3333.2 prior to judgment. We need not decide the question in this case because application of § 3333.2 here requires no additional factual inquiry on our part. Taylor's injuries unquestionably arose from professional negligence for which the government admits responsibility. Taylor suffered no prejudice due to the government's delay in raising § 3333.2. Under these circumstances, we hold that the government raised § 3333.2 "at a pragmatically sufficient time" (*Lucas*, 807 F.2d at 417–18) so as not to waive protection of § 3333.2.

## Conclusion

The district court erred in refusing to reduce noneconomic damages pursuant to § 3333.2. The government raised § 3333.2 in a timely fashion. We reverse the judgment of the district court and remand with instructions to reduce noneconomic damages awarded Taylor to $250,000.[4]

---

3. For example, a plaintiff suing a hospital for injuries arising out of separate acts of ordinary and professional negligence may obtain a lump sum award for noneconomic damages in excess of $250,000. Application of § 3333.2 may depend on the portion of noneconomic damages attributable to professional negligence compared to the portion attributable to ordinary negligence. Because Taylor's injuries arise out of a single act of professional negligence, we do not decide the appropriate method for application of § 3333.2 where several acts combine to produce injuries.

4. Amici contend that § 3333.2 limits total noneconomic damages recoverable in *all actions* arising out of a single incident of professional negligence to $250,000, rather than $250,000 per action, plaintiff or injury. The government did not raise this argument below, but instead

---

moved that the district court reduce damages awarded to Taylor to $250,000. Accordingly, we do not decide whether § 3333.2 limits noneconomic damages to $250,000 per action or $250,000 per incident of professional negligence.