920 F.2d 1475
 John A. AGUILAR; Karen M. Aguilar, husband and wife,
Plaintiffs-Appellants,
v.
UNITED STATES of America; United States Department of the
Interior, Bureau of Reclamation, a subdivision
thereof, Defendants-Appellees.
 No. 89-16018.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 18, 1990.
Decided Dec. 11, 1990.
 
 Richard Crenshaw, Vermeire & Turley, Phoenix, Ariz., for plaintiffs-appellants.
 Mark B. Stern, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before TANG, NOONAN, and RYMER, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 John Aguilar sued the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. Secs. 1346(b), 2674, for personal injuries he suffered from the alleged negligence of a federal employee. The district court granted partial summary judgment for the government, holding that the FTCA incorporates a Nevada state law cap on damages, limiting the government's potential liability. Aguilar appealed upon certification and the grant of an interlocutory appeal. We affirm.
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 On October 31, 1986, the tractor-trailer rig Aguilar was driving broke down on the Nevada side of the road crossing Hoover Dam, within federal jurisdiction. A defect in the brake air line caused the brakes on the truck to lockup. A federal dam police officer, Donald Babcock, was then in charge of directing traffic across the dam. Babcock allegedly required Aguilar to repair the air hose with tape. Babcock also allegedly refused to allow Aguilar to chock the wheels of the truck during the repair procedure. Complying with Babcock's alleged orders, Aguilar was severely injured when his arm was pinned between the two trailers of the truck. Aguilar sued the United States under the FTCA for damages resulting from his injuries, alleging that Babcock acted negligently and caused Aguilar's injuries.
 
 
 3
 The government moved for partial summary judgment, arguing that the FTCA required imposition of Nevada's $50,000 limit on liability for state employees' torts. Nev.Rev.Stat. Sec. 41.035(1). The district court agreed, and granted partial summary judgment limiting the government's potential liability to $50,000. The district court certified the judgment for interlocutory appeal.
 
 II. STANDARD OF REVIEW
 
 4
 We review a grant of summary judgment de novo. Kruso v. International Tel. & Tel., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). This appeal presents no disputed facts. Therefore, we review whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 III. DISCUSSION
 
 5
 The issue confronting us is whether Nevada's limitation of damages recoverable against its officers and employees applies under the FTCA such that liability of a federal police officer is capped at $50,000. Aguilar contends that the cap should not be imposed because: 1) state law immunities do not shield the United States from liability under the FTCA; 2) Nevada's statute is an exception to Nevada's waiver of sovereign immunity and not a limitation on damages; and 3) enforcement of Nevada's statutory limitation is inconsistent with the purposes of the FTCA. We disagree.
 
 A. Background
 
 6
 The FTCA establishes federal government tort liability by express analogy to a private individual's liability under the law of the state where the tort occurred:
 
 
 7
 The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances ....
 
 
 8
 28 U.S.C. Sec. 2674 (emphasis added). Under the FTCA, "[l]iability is to be determined 'in accordance with the law of the place where the [negligent] act or omission occurred.' " Taylor v. United States, 821 F.2d 1428, 1430 (9th Cir.1987) cert. denied, 485 U.S. 992, 108 S.Ct. 1300, 99 L.Ed.2d 510 (1988) (quoting 28 U.S.C. Sec. 1346). In this case, the alleged negligence took place in Nevada. Therefore, Nevada law determines the government's liability for Aguilar's injury. See Taylor, 821 F.2d at 1430.
 
 
 9
 In Nevada, of course, private individuals do not direct traffic on public highways. Nor does Nevada empower private individuals to mandate compliance with orders regarding conduct on public roads. Therefore, no Nevada state law governs the liability of private parties for the actions giving rise to Aguilar's suit.
 
 
 10
 However, "[u]nder the FTCA the United States may 'be liable for the performance of activities private persons do not perform.' " Doggett v. United States, 875 F.2d 684, 689 (9th Cir.1989) (quoting Wright v. United States, 719 F.2d 1032, 1034 (9th Cir.1983)). Because private persons do not wield the powers giving rise to Aguilar's suit, "the inquiry into the government's liability in this situation must include an examination of the liability of state and municipal entities 'under like circumstances.' " Louie v. United States, 776 F.2d 819, 825 (9th Cir.1985). In Doggett, we explained:
 
 
 11
 It is difficult to analyze the United States' liability for actions involving unique governmental functions by simply considering the potential liability of private citizens under state law. In such cases this court has sought to determine what liability state law attaches to similar activities undertaken by analogous entities subject to its jurisdiction.
 
 
 12
 To determine the liability of the United States in Aguilar's case, therefore, we examine the liability that Nevada law attaches to similar activities undertaken by Nevada police officers.
 
 B. Application of Nevada's Cap on Damages
 
 13
 Our precedent thus mandates that in the special circumstance where the federal actor is a police officer without a private analogue, liability is determined by reference to state liability for government employees. That liability may, for those particular actors, be limited just like liability may be limited, under state law, for federal actors who do have private analogues. Where state law has limited the damages recoverable in tort, this court has imposed that limit on FTCA claims. Taylor, 821 F.2d at 1430; Richards v. United States, 369 U.S. 1, 16, 82 S.Ct. 585, 594, 7 L.Ed.2d 492 (1962).
 
 
 14
 Nevada's potential liability for the negligent actions of its police officers is limited to $50,000. Nev.Rev.Code Sec. 41.035(1); State v. Eaton, 101 Nev. 705, 708-09, 710 P.2d 1370, 1373 (1985). Aguilar contends that this limit on the amount of damages should not apply to his FTCA cause of action. We disagree. Just as Nevada law establishes Aguilar's FTCA cause of action, it also limits his FTCA cause of action.
 
 
 15
 The FTCA incorporates limitations on damages contained in state law. In Richards, the Supreme Court held that the FTCA incorporates the limitation on wrongful death damages contained in the Missouri Wrongful Death Act. Richards, 369 U.S. at 16, 82 S.Ct. at 594. Moreover, we have held that California's $250,000 cap on noneconomic injuries in professional negligence cases applies to FTCA claims. Taylor, 821 F.2d at 1432.
 
 
 16
 Because Nevada's liability is limited to $50,000, the United States' potential liability must be limited to $50,000 also. We hold that the potential liability of the United States is limited to $50,000 in damages Aguilar can recover for the acts of federal police officers in Nevada.
 
 
 17
 Aguilar points to United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963), for the proposition that the immunity granted by individual states to their public officials in positions similar to federal officials does not limit the liability of the United States under the FTCA. Aguilar's reliance on Muniz is misplaced.
 
 
 18
 In Muniz, the Supreme Court held that federal prisoners could sue their jailors under the FTCA even though, in some states, jailors are immune from suit. Muniz, 374 U.S. at 164-65, 83 S.Ct. at 1858-59. The Court did not base its decision on the inability of the federal government to assert state caps on liability. Rather, in declining to limit suits by federal prisoners because of restrictive state rules of immunity, the Court held that the "duty of care owed by the Bureau of Prisons to federal prisoners is fixed by 18 U.S.C. Sec. 4042, independent of an inconsistent state rule." Id. (emphasis added). No analogous independent uniform policy of the federal government mandates the duty of care owed by federal police officers directing traffic. Aguilar's case is thus unlike Muniz, and the United States can assert the limits on Nevada's liability in Aguilar's case.
 
 
 19
 Aguilar also contends that Wright v. United States establishes that the government cannot assert Nevada's cap on damages in a FTCA claim. We held in Wright that the United States could be held liable for malicious prosecution because of the actions of the Internal Revenue Service, even though state revenue agents in the state where the tort occurred were immune from suit. Wright, 719 F.2d at 1034-35.
 
 
 20
 We distinguish Wright from Aguilar's case. We note that any private person can be held liable for malicious prosecution. In Wright, because private persons were liable for malicious prosecution, so was the United States, as dictated by the FTCA. In Aguilar's case, private persons are not liable for negligently directing traffic. In Wright, this court had no call to look to the potential liability of state employees and their state immunity. In Aguilar's case, we must look to Nevada employees liability for Aguilar's cause of action. When we incorporate Nevada law to establish Aguilar's cause of action, we also must incorporate the statutory limit on damages. Such a result is consistent with our holding in Taylor. Because Nevada liability under state law is limited to $50,000, it follows that the liability of the United States for the actions of its federal police officers acting in Nevada must likewise be limited to $50,000.
 
 C. Exception to Sovereign Immunity
 
 21
 Aguilar argues that the FTCA should not incorporate the Nevada damages cap because the cap is an exception to Nevada's waiver of sovereign immunity and not simply a statute capping damages. Aguilar thus attempts to distinguish this case from Taylor, 821 F.2d at 1432, where we held the FTCA incorporated the California damage limitation in medical malpractice actions. This is simply a distinction without a difference. As we have noted, Nevada state law both establishes Aguilar's cause of action and limits the available damages to $50,000. The fact that the $50,000 damage cap is included in Nevada's waiver of sovereign immunity has no significance under the FTCA. We also emphasize that applying the Nevada cap does not eliminate the liability of the United States altogether.
 
 D. Purpose of the FTCA
 
 22
 Finally, we disagree with Aguilar's contention that the imposition of this cap is at odds with the purposes of the FTCA. It is true that the FTCA was "designed primarily to remove the sovereign immunity of the United States from suits in tort...." Richards, 369 U.S. at 6, 82 S.Ct. at 589. As we have noted, however, for almost thirty years the FTCA has incorporated the limits of liability contained in state law. See id., at 16, 82 S.Ct. at 594. More recently, we held the FTCA imposed California's statutory damage limitation in medical malpractice claims. Taylor, 821 F.2d at 1432. The statutory language of the FTCA compels our result in each case. The FTCA mandates the application of state law. Nevada state law includes a cap on damages. We must, therefore, apply this limit. Should Congress decide that the imposition of state law damage caps is inappropriate, it may amend the FTCA.
 
 IV. CONCLUSION
 
 23
 We conclude that the FTCA incorporates Nevada Revised Statutes Sec. 41.035(1), imposing a $50,000 cap on the damages that Aguilar may recover in his federal action.
 
 
 24
 AFFIRMED.
 
 NOONAN, Circuit Judge, dissenting:
 
 25
 The Federal Tort Claims Act waives the sovereign immunity of the United States declaring:
 
 
 26
 The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances.... 28 U.S.C. Sec. 2674.
 
 
 27
 A gap in the law exists if the tort complained of is performed by a federal agent carrying out a governmental function that no private individual could perform. The gap has been filled by judicial reasoning. Although no private analogue exists, the United States will be held liable for the wrongful acts of its agents committing torts that no private individual would possess the authority and opportunity to commit. United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955).
 
 
 28
 In the present case it is alleged that a federal police officer negligently directed the repair of the plaintiff's truck. No private individual would have had authority to direct this repair. Nonetheless, the United States should not escape liability for the officer's negligence. We look to the law of the state for the most relevant rule of tort. The approach taken by this court has been to ask "what liability state law attaches to similar activities undertaken by analogous entities subject to its jurisdiction." Doggett v. United States, 875 F.2d 684, 689 (9th Cir.1989). Under Nevada law, the negligence of a police officer in the performing of his duty gives rise to liability. See Nevada v. Eaton, 101 Nev. 705, 710 P.2d 1370, 1373 (1985). Consequently, the United States is liable here for all the damages caused if the negligence alleged took place.
 
 
 29
 The majority, however, has undertaken a gratuitous, irrelevant digression to determine that if a Nevada state entity were sued there would be a statutory cap on the state's liability. The majority's approach is gratuitous and irrelevant because the state statutory cap is part of the state's preservation of limited state sovereign immunity. The state statute reads:
 
 
 30
 NRS Sec. 41.031 Waiver of immunity from liability and action; actions; State of Nevada as defendant; service of process.
 
 
 31
 1. The State of Nevada hereby waives its immunity from liability and action and hereby consents to have its liability determined in accordance with the same rules of law as are applied to civil actions against natural persons and corporations, except as otherwise provided in NRS 41.032 to 41.038 ...
 
 
 32
 NRS Sec. 41.035 Limitation on award for damages in tort actions.
 
 
 33
 1. An award for damages in an action sounding in tort brought under NRS 41.031 or against a present or former officer or employee of the state or any political subdivision, immune contractor or any state legislator arising out of an act or omission within the scope of his public duties or employment may not exceed the sum of $50,000, exclusive of interest computed from the date of judgment, to or for the benefit of any claimant. An award may not include any amount as exemplary or punitive damages.
 
 
 34
 Nevada case law indicates that the limit imposed in 41.035 is an integral part of the scheme to waive sovereign immunity rather than a simple limit on damages. In State v. Silva, 86 Nev. 911, 914, 478 P.2d 591, 593 (1970), a case in which the limit on recovery was upheld against a constitutional challenge, the court explained the purpose of the act. It said:
 
 
 35
 Before the enactment of the statutory waiver of immunity, Nevada case law on the viability of the doctrine of sovereign immunity was uncertain and in flux. The trend was toward the judicial abolition of that doctrine. It is only fair to assume that the 1965 Legislature reacted to that trend, and elected to waive immunity within limits and impose a ceiling upon the recovery allowable to a claimant, rather than await further judicial action upon the subject. The apparent legislative thrust was to waive immunity and, correlatively, to strictly construe limitations upon that waiver. (citations omitted).
 
 
 36
 If Nevada had retained full sovereign immunity, the plaintiffs here would not be denied recovery. See United States v. Muniz, 374 U.S. at 164, 83 S.Ct. at 1858; Indian Towing Co. v. United States, 350 U.S. at 65, 76 S.Ct. at 124. A fortiori, the plaintiff cannot be defeated by Nevada's retention of partial sovereign immunity. The sovereign immunity of the state has no relevance to the liability of the United States. Wright v. United States, 719 F.2d 1032 (9th Cir.1983). A "finding of immunity for state employees under state law does not determine the scope of the United States' liability under the FTCA." Louie v. United States, 776 F.2d 819, 825 (9th Cir.1985). The attention of the majority has been deflected from this obvious point by the cases incorporating state limits on liability that applied across the board to private actions. Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); Taylor v. United States, 821 F.2d 1428 (9th Cir.1987). These cases do not depend on state sovereign immunity. They have no relevance here.
 
 
 37
 The majority revives an issue that in its essentials was fought and decided over a quarter of a century ago: Is the operation of the Federal Tort Claims Act limited by the particular rule of municipal immunity of the state where the tort occurs? In Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), four justices of the United States Supreme Court thought that under Louisiana law the United States would not have been liable for negligent maintenance of navigation lights and that holding the United States liable was "a complete surrender of sovereign immunity without regard to the law of municipal liability of the respective States." Id. at 76, 76 S.Ct. at 130. The Court held otherwise, declaring that the Federal Tort Claims Act was "not self-defeating by covertly embedding the casuistries of municipal liability for torts." Id. at 65, 76 S.Ct. at 124-25. The Court went on to warn: the Court should not "as a self-constituted guardian of the Treasury import immunity back into a statute designed to limit it." Id. at 69, 76 S.Ct. at 126.
 
 
 38
 Indian Towing was controlling eight years later when the question was whether a federal prisoner could sue the United States for negligence. United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). Writing for a unanimous Court, Chief Justice Warren stated: "Just as we refused to import the 'casuistries of municipal liability for torts' in Indian Towing, so we think it improper to limit suits by federal prisoners because of restrictive state rules of immunity." Id. at 164, 83 S.Ct. at 1859. The Court also referred to the duty of care established for the Bureau of Prisons by federal law, but this reference was in the course of determining that the function of care was not discretionary; the reference was independent of the holding that state immunity of jailers was irrelevant. Id. at 164-65, 83 S.Ct. at 1858-59. The Court went on to warn: "The Federal Tort Claims Act provides much-needed relief to those suffering injury from the negligence of government employees. We should not, at the same time that the state courts are striving to mitigate the hardships caused by sovereign immunity, narrow the remedies provided by Congress." Id. at 165-66, 83 S.Ct. at 1859. Is it possible that the majority here does not see that Nevada's half-hearted waiver of sovereign immunity is not a "casuistry of municipal law"? Is it possible that the majority does not see that it is cutting back on the remedy Congress gave?
 
 
 39
 The Federal Tort Claims Act was intended to remove a pernicious doctrine: that the King could do no wrong, that the King did not have to account for the harm he did, that the King could with impunity violate the rights of his subjects. Vestiges of this cruel and arrogant doctrine remain, cloaked in solicitude for the public purse. It is astonishing that a federal court should--in conflict with its own precedents and those of the Supreme Court of the United States--decide to honor such a vestige of autocracy and incorporate it as a new immunity for negligent federal actors.
 
 
 40
 I respectfully dissent.