Paul STUART, an individual, Guardian Ad Litem for Nicholas Stuart in his individual capacity and as Administrator of the estate of Babette Stuart deceased, Plaintiff,

v.

The UNITED STATES GOVERNMENT, Defendant.

No. SA CV 91–42–LTL (RWRx).

United States District Court,
C.D. California.

Aug. 20, 1992.

Raymond P. Johnson, Law Offices of Raymond P. Johnson, Los Angeles, Cal., for plaintiff.

Mary A. Sedgwick, James R. Sullivan, Asst. U.S. Attys., Civ. Div., Los Angeles, Cal., for defendant.

### MEMORANDUM OF OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

LYDICK, District Judge.

#### Introduction

This action was brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 *et seq.* Plaintiff Paul Stuart ("plaintiff") seeks damages from the United States Government ("defendant") for the death of Babette Stuart and injury to plaintiff and his minor son Nicholas Stuart. Plaintiff is Babette Stuart's surviving husband and brought this suit as an individual, as Guardian Ad Litem for his minor son Nicholas Stuart and as Administrator of the Estate of Babette Stuart.

Babette Stuart died and plaintiff and Nicholas Stuart were injured on February 6, 1990 in an automobile collision in Temecula, California.[1] A two-day trial was held before the Court sitting without a jury on the issues of liability only commencing on August 11, 1992. The Court having issued its written Decision on August 17, 1992, this opinion sets out the Court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a).

#### Findings of Fact and Conclusions of Law

Shortly after 10:00 p.m. on the evening of the collision, United States Border Patrol agents Carlos Ramos ("Ramos") and Johnathan King ("King") were proceeding south on Rainbow Canyon Road to the Interstate 15 Border Patrol Checkpoint in Temecula, California, during a shift change for the Temecula Border Patrol Station. The two agents were in a Border Patrol car and were observing Rainbow Canyon Road for possible alien smuggling traffic as they drove to the Border Patrol Checkpoint. Agents King and Ramos were acting within the course and scope of their Border Patrol employment, as employees of defendant United States Government, at all times herein.

Rainbow Canyon Road was known by the two agents to be commonly used by alien smugglers to avoid the nearby Temecula Border Patrol Checkpoint on the Interstate 15 freeway which was in operation at that time and was commonly patrolled by Border Patrol agents. At about 10:20 p.m. on the night of the accident, the agents, while proceeding south on Rainbow Canyon Road, observed a car approaching them from the south. The agents pulled off the road and parked facing the road. When the approaching car passed in front of the Border Patrol car, the approaching car and its passengers were illuminated by the headlights of the Border Patrol car.

The agents observed that the approaching car was a Hyundai, that it contained four persons all of whom appeared to be Hispanic and that the persons in the car seemed unnaturally stiff and stared straight ahead as the Hyundai passed through the illumination from the Border Patrol car headlights. It had been the experience of agents King and Ramos that most of the alien smuggling in the Temecula area involved the smuggling of Hispanic aliens and that alien smuggling activity in the Temecula area was usually higher dur-

---

**1.** Plaintiff also has pending a state court wrongful death action arising from the same accident upon which this lawsuit is based entitled *Paul Stuart, an Individual, Guardian Ad Litem for Nicholas Stuart, In His Individual Capacity and As An Administrator of the Estate of Babette Stuart, Deceased v. The State of California, The County of Riverside, George Rethati, An Individ-* ual; *Mountain Valley Homes, an Unincorporated Association; California Sunset Homeowners Association, an Unincorporated Association; Kaufman Broad Homes, a Corporation, Does 1 through 100, Inclusive,* Case No. 208980 in the Superior Court of the State of California for the County of Riverside.

ing Temecula Border Patrol Station shift changes.

The agents pulled out onto Rainbow Canyon Road behind the Hyundai, turned on their overhead emergency lights and followed the Hyundai northbound on Rainbow Canyon Road, intending to stop the Hyundai for an immigration inspection of its occupants. The agents followed the Hyundai for approximately ¼ mile at a speed of approximately 15 to 20 miles per hour. The agents then turned on the Border Patrol car's siren.

When the Border Patrol's siren came on, the Hyundai sped up. Still following the Hyundai, the agents radioed to advise the Temecula Border Patrol Station that the Hyundai had failed to stop. The agents pursued the Hyundai northbound on Rainbow Canyon Road at speeds ranging from 25 to 60 miles per hour. The route traveled by the vehicles on Rainbow Canyon Road contained several curves. The maximum speeds during the pursuit were obtained on the straightaway portions of Rainbow Canyon Road. The agents maintained a distance between their Border Patrol car and the Hyundai of approximately three to five car lengths and observed portions of the Hyundai crossing briefly over the center line of Rainbow Canyon Road during their pursuit. However, the Hyundai never maintained its position on the wrong side of the center line. There were no posted speed limits on the portion of Rainbow Canyon Road involved in the pursuit at the time of the pursuit.

When the Hyundai reached the intersection of Rainbow Canyon Road and Pala Road, it braked and reduced speed slightly but did not observe the "Stop" sign located at that intersection. The Hyundai turned left at the intersection and proceeded northbound on Pala Road, toward the intersection of Pala Road and Highway 79. The agents radioed to advise the Temecula Border Patrol Station that the Hyundai did not stop at the intersection of Rainbow Canyon Road and Pala Road and pursued the Hyundai onto Pala Road.

Upon reaching the intersection of Pala Road with Highway 79 the Hyundai turned westbound onto Highway 79, failing to observe the "Stop" sign located at that intersection. While turning westbound from Pala Road onto Highway 79, the Hyundai struck the Stuart car, driven by Paul Stuart, that had been traveling eastbound on Highway 79. Both the Hyundai and the Stuart car came to rest on the north side of Highway 79. The Border Patrol car containing agents Ramos and King was approximately seven car lengths behind the Hyundai when the Hyundai collided with the Stuart car. Babette Stuart and Nicholas Stuart were passengers in the Stuart car. Babette Stuart died in the collision, and Paul Stuart and Nicholas Stuart were injured in the collision.

The road was dry on the night of the accident and agents Ramos and King did not observe any vehicles besides the Hyundai and plaintiff's car throughout the pursuit. The entire pursuit lasted less than three minutes and involved a distance of less than three miles. Percipient testimony regarding the majority of the incidents on the night of the accident was limited to that of agents King and Ramos; the occupants of the Hyundai were not called and did not testify at the trial.

At trial, plaintiff attempted to prove, primarily through expert testimony, that after the Hyundai collided with the Stuart's vehicle the pursuing Border Patrol vehicle also collided with the Stuart's vehicle. This Court finds that plaintiff has not proved by a preponderance of credible evidence his theory that the Border Patrol vehicle occupied by agents Ramos and King struck plaintiff's vehicle at any time.

The United States Border Patrol has adopted a written "Border Patrol Pursuit Policy" governing the operation of Border Patrol vehicles during pursuits and emergency situations. The Court finds that Border Patrol agents Ramos and King and the United States Border Patrol complied with this policy and acted reasonably and exercised due care in their actions involving the pursuit of the Hyundai. The Court therefore finds and concludes that no act or omission by any employee of the United States was a proximate cause of the acci-

dent or of any damages or injury to plaintiffs.

As noted above, this is an action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 *et seq.* As a sovereign, the United States is immune from suit except when it consents to be sued, and "the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941)). The Federal Tort Claims Act is a waiver of the sovereign immunity of the United States government, and courts should not "extend the waiver beyond that which Congress intended." *United States v. Kubrick,* 444 U.S. 111, 117–118, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979).

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(b) which provides, in part:

> [T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). Plaintiff complied with the claim requirements of the Federal Tort Claims Act (28 U.S.C. § 2675) and the action was timely filed.

■ Carlos Ramos and Johnathan King were United States Border Patrol employees, acting within the course and scope of their employment with the defendant at the time of the within accident. Pursuant to 28 U.S.C. § 1346(b), the liability of defendant, if any, is that of an employer under the laws of the State of California where the accident occurred. Thus, unless immune under California law, defendant may be held liable for any negligent acts committed by agents Ramos and King within the scope of their employment with defendant. Cal.Civ.Code § 2338 (West 1985).

Whether the United States is liable under the Federal Tort Claims Act for the actions of federal law enforcement officers is determined by whether a state public entity would be liable for the actions of its law enforcement officers in like circumstances:

> [W]here the federal actor is a police officer without a private analogue, liability is determined by reference to state liability for government employees. That liability may, for those particular actors, be limited just like liability may be limited, under state law, for federal actors who do have private analogues.

*Aguilar v. U.S.,* 920 F.2d 1475, 1477–78 (9th Cir.1990).

California law limits the liability of law enforcement officers involved in pursuits:

> A public agency employing peace officers which adopts a written policy on vehicular pursuits complying with subdivision (c) is immune from liability for civil damages for personal injury to or death of any person or damage to property resulting from the collision of a vehicle being operated by an actual or suspected violator of the law who is being, has been, or believes he or she is being or has been, pursued by a peace officer employed by the public entity in a motor vehicle.

Cal.Veh.Code § 17004.7(b) (West Supp. 1992). Pursuant to the Ninth Circuit's decision in *Aguilar,* section 17004.7(b) may be applied in this action to limit the liability of the defendant for the actions of the federal Border Patrol agents.

California Vehicle Code § 17004.7(c) provides as follows:

> If the public entity has adopted a policy for the safe conduct of vehicular pursuits by peace officers, it shall meet all of the following minimum standards:
>
> (1) It provides that, if available, there be supervisory control of the pursuit.
>
> (2) It provides procedures for designating the primary pursuit vehicle and for determining the total number of ve-

hicles to be permitted to participate at one time in the pursuit.

(3) It provides procedures for coordinating operations with other jurisdictions.

(4) It provides guidelines for determining when the interests of public safety and effective law enforcement justify a vehicular pursuit and when a vehicular pursuit should not be initiated or should be terminated.

Cal.Veh.Code § 17004.7(c) (West Supp. 1992). The determination of whether a policy adopted pursuant to Cal.Veh.Code § 17004.7(c) complies with that subdivision is a question of law for the Court. Cal. Veh.Code § 17004.7(d).

■ This Court finds that the pursuit policy adopted by the United States Border Patrol satisfies Section 17004.7(c) of the California Vehicle Code. *See also Montes v. U.S.*, 778 F.Supp. 19, 21 (S.D.Cal.1991). Specifically, the Border Patrol's pursuit policy provides (1) for supervisory control of the pursuit (Pursuit Policy at § 7(c)); (2) procedures for designating the lead vehicle and determining the maximum number of vehicles permitted to participate in the pursuit (Pursuit Policy at §§ 7(A) and 8(E)); (3) procedures for coordinating operations with other jurisdictions (Pursuit Policy at §§ 5, 7(C)(2)(C), and 8(J)); and (4) guidelines for determining when a pursuit should or should not be initiated and when it should be terminated (Pursuit Policy at §§ 3 and 5). Therefore, pursuant to California Vehicle Code Section 17004.7(b), the United States is immune from liability for plaintiff's injuries.

■ Even if the United States Border Patrol's pursuit policy did not comply with California law, the defendant would still not be liable to plaintiff if the actions of Border Patrol agents Ramos and King were not negligent. Under the laws of California, actionable negligence requires: (a) a legal duty to use due care, (b) a breach of such legal duty and (c) such breach as the proximate or legal cause of the resulting injury. *United States Liability Ins. Co. v. Haidinger–Hayes, Inc.*, 1 Cal.3d 586, 594, 83 Cal.Rptr. 418, 422, 463

P.2d 770, 774 (1970). Plaintiff has the burden of proving by a preponderance of the evidence that defendant was negligent and that such negligence was the proximate cause of plaintiff's injuries. *Elder v. Pacific Telephone and Telegraph Co.*, 66 Cal. App.3d 650, 657, 136 Cal.Rptr. 203, 206 (1977).

■ Negligence is a mixed question of law and fact and the determination of negligence requires the testing of particular facts against a predetermined standard of conduct. *Miller v. United States*, 587 F.2d 991, 994 (9th Cir.1978). The existence and extent of a legal duty of care are questions of law, but whether such a duty has been breached and whether proximate cause exists are questions for the finder of fact. *Doggett v. U.S.*, 875 F.2d 684, 692–93 (9th Cir.1989).

California law provides that the driver of an emergency vehicle, including a law enforcement officer in pursuit of a suspect, has a "duty to drive with due regard for the safety of all persons using the highway." Cal.Veh.Code §§ 21055 and 21056 (West 1971 and West Supp.1992). The conclusion that agents Ramos and King drove with due regard for the safety of others is supported by evidence indicating that the pursuit route was virtually devoid of other traffic, that reasonable speeds and distances between the vehicles were maintained and that the pursuit was brief and took place over a short distance.

Plaintiff has failed to show by a preponderance of evidence that any act or omission by defendant's employees or any of them breached their legal duty of care to plaintiff or that any such breach was the proximate or legal cause of any injury suffered by plaintiff. This tragic accident was not the result of any negligence on the part of agents Ramos and King, who were properly performing their duties as United States Border Patrol agents.

Accordingly, judgment will be entered that plaintiff take nothing by reasons of his complaint herein, that the action be dismissed on the merits and that defendant

805

recover from plaintiff its costs of suit incurred.