Paul STUART, an individual, as Guardian Ad Litem for Nicholas Stuart, in his individual capacity, and as Administrator of the Estate of Babette Stuart, deceased, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 93–55229.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 5, 1994.

Decided March 1, 1994.

As Amended on Denial of Rehearing and Rehearing En Banc May 24, 1994.

---

Raymond P. Johnson, Los Angeles, CA, for plaintiff-appellant.

Mary A. Sedgwick, Asst. U.S. Atty., Los Angeles, CA, for defendant-appellee.

Before GOODWIN, HALL, Circuit Judges, and TANNER,* District Judge.

Opinion by Judge GOODWIN.

GOODWIN, Circuit Judge:

Paul Stuart appeals from a judgment for the United States in his action for damages under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671 *et seq.*

Plaintiff and his minor son, Nicholas Stuart, were injured, and his wife died, in an automobile collision in Temecula, California, when a Hyundai fleeing from U.S. Border Patrol agents crashed into the Stuart's auto-

---

* Honorable Jack E. Tanner, United States District Judge for the Western District of Washington, sitting by designation.

mobile. After a bench trial, the court applied California Vehicle Code § 17004.7(b), which immunizes municipal governments from liability in police chase cases. The court found the United States immune from liability for the plaintiff's injuries, and dismissed the action. *Stuart v. United States,* 797 F.Supp. 800, 804 (C.D.Cal.1992).

As an alternative ground for granting judgment for the United States, the district court found that the border patrol agents had not been negligent in pursuing a suspected illegal alien smuggler. *Id.* Stuart appeals from the judgment, assigning error to both rulings, as well as to other occurrences during the trial. We reverse the district court's primary holding on the immunity question. However, we affirm the court's alternative holding, and remand for entry of judgment for the defense.

## I. *The Accident*

Shortly after 10 p.m. on the evening of the collision, U.S. Border Patrol agents Carlos Ramos and Johnathan King decided to follow a Hyundai traveling north on Rainbow Canyon Road, believing the occupants to be illegal aliens from Mexico. The agents followed the Hyundai approximately a quarter mile at a speed of about 15 to 20 miles per hour. When the agents turned on the border patrol car siren, the Hyundai sped off with the agents in pursuit. The pursuit was conducted on surface streets at speeds ranging from 25 to 65 miles per hour. When the Hyundai reached the intersection of Pala Road and Highway 79, the driver of the car failed to observe a stop sign and struck the Stuart car, which had been traveling east on Highway 79.

## II. *Jurisdiction*

The Government argues that this court does not have jurisdiction over all aspects of this appeal because the plaintiffs filed an untimely amended notice of appeal and did not specify all of the grounds for appeal in its timely notice.

The district court entered a final judgment in this case on August 21, 1992. Plaintiffs filed a motion for new trial on August 31, 1992. The district court denied the motion, entering the order on December 2, 1992. A timely filed notice of appeal was followed by a late, amended notice of appeal. The Government argues that we cannot address the grounds for appeal raised in the amended notice of appeal, including the plaintiffs' claim of judicial bias and misconduct, because it was not timely filed.

This court has the inherent power to permit a party to amend a notice of appeal even without a formal motion. *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1085 (9th Cir. 1989). Further, "a mistake in designating the judgment appealed from should not bar appeal as long as the intent to appeal a specific judgment can be fairly inferred and the appellee is not prejudiced by the mistake." *Pope v. Savings Bank of Puget Sound,* 850 F.2d 1345, 1347 (9th Cir.1988) (internal quotation marks omitted). We find both of the *Pope* elements met here. Although the amended notice was late, the original notice was timely, and preserved the appeal. We have jurisdiction.

## III. *Trial Court Demeanor*

Stuart contends that he was denied a fair trial because the trial judge was biased in favor of the Government. He cites a number of instances in the record where the conduct of the trial judge was not a model of judicial decorum and impartiality. The plaintiff asserts that the judge took over the examination of witnesses in an excessive and abusive manner, denigrating the efforts of counsel to put on the plaintiff's case, and excluded proffered testimony, in a rude and domineering manner.

## A. *Lack of Contemporaneous Objections*

The Government first contends that Stuart waived any claim of judicial bias or misconduct by failing to raise it at trial. The Government notes that under Federal Rule of Evidence 614(b), the district court had the right to interrogate witnesses, and that any objection to such interrogation must be made at the time of the questioning. Fed.R.Evid. 614(c). The Government is right; however, judicial discretion in these matters can be abused, and at some level, can defeat the fairness of a trial.

Assuming that contemporaneous objections are not required "where a trial

judge's comments were so prejudicial as to deny a party an opportunity for a fair and impartial trial," *Coats & Clark, Inc. v. Gay,* 755 F.2d 1506, 1511 (11th Cir.1985), *cert. denied,* 474 U.S. 903, 106 S.Ct. 231, 88 L.Ed.2d 230 (1985), we do not find that the conduct of the judge here was so prejudicial as to deny Stuart a fair trial.

■ To demonstrate that the trial judge was biased, the aggrieved party must show that the judge's conduct reflected a disposition, based on extrajudicial sources, to treat that party unfairly. *Hansen v. Commissioner of IRS,* 820 F.2d 1464, 1467 (9th Cir.1987); *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). In addition, "a clear and precise showing of prejudice must be made to demonstrate judicial misconduct, particularly in noncriminal trials." *Hansen,* 820 F.2d at 1467.

The trial in this case would not serve as an example for the training of new judges, but it was not a travesty. Many of the rulings now objected to were legally correct. For example, the excluded evidence should have been excluded. Appellant makes much of the tone and style of the adverse rulings, which did leave something to be desired in terms of civility and courtesy to counsel; but he fails to show that the rulings were legally in error.

### B. *Reference to* Galileo's Revenge

Apparently attempting to fit his appeal into the policy against judicial decisions being founded on extrajudicial sources, Stuart contends that the judge had been influenced by an extrajudicial source: *Galileo's Revenge: Junk Science in the Courtroom* (1991). The book, written by Peter W. Huber, condemns the plaintiffs' personal injury bar for their use of expert witnesses, who he characterizes as "junk scientists." Huber argues that such experts often have dubious credentials and offer farfetched theories of liability. In court, the judge mentioned the book and spoke disparagingly of "junk science."

The judge believed, from a long career at the bar and on the bench, that the testimony being offered by one or more of the plaintiff's opinion witnesses provided little help to a trier of fact. The judge could determine without the help of an accident reconstruction expert or a highway and traffic safety engineer whether police officers had probable cause to believe that a crime was being committed in their presence. The judge could also determine from the objective evidence and eyewitness testimony whether the officers acted reasonably in pursuing the suspect under all the circumstances of the case.

■ While the judge "made no secret of his skepticism of appellants' position" it does not necessarily follow that the judge's ultimate fact findings were erroneous. *See Sealy, Inc. v. Easy Living, Inc.,* 743 F.2d 1378, 1383 (9th Cir.1984). Intemperate bench behavior does not require reversal merely to chastise a judge if the judgment appealed from was one supported by the law and the facts. Here, despite the discomfort level of counsel during the trial, the judgment was based on findings of fact that found support in evidence. The parties were "permitted to respond to the district court's expressed concerns to the best of their ability." *See id.*

Although the appeal concentrates on the judge's participation in the plaintiff's case, the record reveals that the Government also labored uphill at times against sarcasm and interruption. At several points, the judge criticized the Government's attorneys for making too many objections. He also interrupted defense witnesses to ask clarifying questions; to announce his opinion on the evidence; and on one occasion, to comment negatively on the testifying witness ("this witness doesn't have sense enough to know where his qualifications stop"). The judge even paused to upbraid a defense witness for staring at him from the witness box. ("Is there something bothering you? ... Then stop staring.").

■ Most of the cases reversed for trial court conduct have involved jury trials. In these cases, the appellate court found that the trial judge had so interfered with the functioning of the adversarial process as to render the resulting judgment unfair. *See Maheu v. Hughes Tool Co.,* 569 F.2d 459, 471–72 (9th Cir.1977); *Sit–Set, A.G. v. Universal Jet Exchange, Inc.,* 747 F.2d 921, 926 (4th Cir.1984); *Pollard v. Fennell,* 400 F.2d

421, 424 (4th Cir.1968). *But see Anderson v. Sheppard,* 856 F.2d 741 (6th Cir.1988) (reversing and remanding for judicial bias in non-jury trial). In a non-jury trial, unwanted comments from the judge may be harassing and distracting to counsel, but rarely will they alone result in a miscarriage of justice. The discomfort of the litigants in the instant case is understandable, but the facts of the case did not establish negligence as a matter of law, and the trial court had a factual basis for finding no negligence on the part of the federal agents.

### IV.  *Plaintiff's Expert*

Stuart argues that the judge improperly excluded expert testimony from Professor Geoffrey Alpert, who frequently testifies in police pursuit and deadly force cases. Plaintiff says his expert was essential to an understanding of the ultimate issue of negligence. Plaintiff tendered his expert to testify about whether the Border Patrol agents' decision to stop persons suspected only of illegal immigration violated standard police procedures under the circumstances. The judge ordered the testimony excluded and threatened plaintiff's counsel with contempt if he tried to elicit such testimony. The judge's method of expression could have been more graceful, but he was right on the law. We review the exclusion of that type of tendered opinion evidence under the abuse of discretion standard. *Shad v. Dean Witter Reynolds, Inc.,* 799 F.2d 525, 529 (9th Cir.1986); *Roberts v. College of the Desert,* 870 F.2d 1411, 1418 (9th Cir.1988).

■ The questions that elicited the objections appeared to seek an opinion on whether probable cause existed to stop the Hyundai—a question that Mr. Alpert was not as well-qualified as the trier of fact to answer. Moreover, "standard police procedure," as developed by an expert, may not shed light on what is reasonable conduct for border patrol officers. There was no abuse of discretion.

### V.  *California Vehicle Code § 17004.7*

Plaintiff contends that the district court erred in concluding that the United States was immune from suit under California Vehicle Code § 17004.7, which grants immunity to governmental entities whose law enforcement officers engage in vehicle pursuits. We agree. However, the error was harmless.

Whether the United States is immune from liability in a Federal Tort Claims Act action is a question of federal law that we review de novo. *See Gallea v. United States,* 779 F.2d 1403, 1404–05 (9th Cir.1986).

■ Under the FTCA, the United States may be liable in tort if a private individual would have been liable under the laws of the state where the act or omission occurred. 28 U.S.C. § 1346(b); *Wright v. United States,* 719 F.2d 1032, 1034 (9th Cir. 1983); *Indian Towing Co. v. United States,* 350 U.S. 61, 63–65, 76 S.Ct. 122, 123–24, 100 L.Ed. 48 (1955). However, a finding of immunity for state employees under state law does not necessarily mean that the United States has no liability for injuries caused by its employees. *Wright,* 719 F.2d at 1034–35; *Louie v. United States,* 776 F.2d 819, 825 (9th Cir.1985).

■ California law limits the government's liability for negligence of law enforcement officers involved in pursuits. The relevant statute reads:

> A public agency employing peace officers which adopts a written policy on vehicular pursuits complying with subdivision (c) is immune from liability for civil damages for personal injury to or death of any person or damage to property resulting from the collision of a vehicle being operated by an actual or suspected violator of the law who is being, has been, or believes he or she is being or has been, pursued by a peace officer employed by the public entity in a motor vehicle.

Cal.Veh.Code § 17004.7(b) (West Supp.1992).

The trial court ruled that *Aguilar v. United States,* 920 F.2d 1475 (9th Cir.1990), affords the United States immunity from liability in this case. In *Aguilar,* a divided court held that "where the federal actor is a police officer without a private analogue, liability is determined by reference to state liability for government employees." 920 F.2d at 1477. In that case, the court held that a Nevada state law that limited the state's potential liability for negligence of its police officers to $50,000 was applicable to the United States in an action under the FTCA. *Id.* at 1478.

The plaintiff points out, and we agree, that *Aguilar* is distinguishable. At issue in *Aguilar* was a state statute that placed a monetary cap on liability for the actions of state employees. In this case, California has a state statute granting municipal *immunity*, not a monetary cap.

The Ninth Circuit has refused to grant immunity to federal officers based on state statutes that confer public entity immunity for the conduct of government employees in an action against the United States under the FTCA. *Wright*, 719 F.2d at 1034–35. *Wright* relied on a string of Supreme Court cases holding that state law immunity from liability does not apply to the United States in an action under the FTCA. *See United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). In *Indian Towing*, the Court declared that the FTCA was "not self-. defeating by covertly embedding the casuistries of municipal liability for torts." *Id.* at 65. The Court went on to warn: the Court should not "as a self-constituted guardian of the Treasury import immunity back into a statute designed to limit it." *Id.* at 69.

Because of the Supreme Court's clear teaching that the "casuistry of municipal law" should not be incorporated into the Federal Tort Claims Act, we hold that California Vehicle Code § 17004.7 does not apply to the United States in an action under the FTCA.[1]

### VI. *Conclusion*

We review a district court's finding of negligence for clear error. *Vollendorff v. United States*, 951 F.2d 215, 217 (9th Cir.1991). The trial court's finding that the agents acted reasonably under all the circumstances in this case is not clearly erroneous.

**AFFIRMED.**

### ORDER

The opinion filed March 1, 1994, slip op. 2129, is amended as follows:

[Editor's Note: Amendments incorporated for purposes of publication.]

With these amendments, the panel has voted unanimously to deny the petition for rehearing. Judge Hall has voted to reject the suggestion for rehearing en banc, and Judges Goodwin and Tanner so recommend.

The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed.R.App.P. 35.

The petition for rehearing is DENIED and the suggestion for rehearing en banc is REJECTED.

---

1. Stuart also argues that the U.S. Border Patrol policy does not meet the requirements of the California immunity statute because it fails to set specific objective guidelines for when a pursuit is justified and when it should be terminated. Because we hold that state-conferred immunity for local governments does not immunize the federal government, we need not reach this issue.