**Frederic V. HETZEL and Mary Hetzel, Appellees,**

v.

**UNITED STATES of America, Appellant.**

No. 93–5193.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 3, 1994.

Decided Jan. 13, 1995.

Michael J. Ryan, Asst. U.S. Atty., argued the cause for appellant. With him on the brief were Eric H. Holder, Jr., U.S. Atty., R. Craig Lawrence and John D. Bates, Asst. U.S. Attys. David B. Orbuch, Asst. U.S. Atty., entered an appearance.

Laurence Shore, argued the cause for appellees. With him on the briefs was Nathan D. Povich.

Before: WALD, WILLIAMS, and ROGERS, Circuit Judges.

Opinion of the Court filed by Circuit Judge ROGERS.

Concurring opinion by Circuit Judge STEPHEN F. WILLIAMS.

ROGERS, Circuit Judge:

This appeal presents the issue whether the United States can be held liable for negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680 (1988), for an accident caused by a federal officer's high-speed chase of a criminal suspect in the District of Columbia. Appellees Frederic V. and Mary Hetzel brought suit for personal injuries sustained when a car being pursued by the United States Drug Enforcement Agency ("DEA") collided with Mr. Hetzel. The district court entered a judgment for the Hetzels, finding that the DEA was negligent in conducting the chase and in not breaking off the chase before the collision occurred. The United States contends that its liability under the FTCA is defined by a District of Columbia statute partially waiving the District government's immunity from suit for claims arising from the gross negligence of District government employees operating emergency vehicles. Alternatively, the United States contends that if a negligence standard does apply, the district court's findings are clearly erroneous. We hold that the local statute on which the United States relies does not modify the United States' waiver of immunity under the FTCA. *See Indian Towing Co., Inc. v. Unit-*

*ed States,* 350 U.S. 61, 69, 76 S.Ct. 122, 126–27, 100 L.Ed. 48 (1955). Therefore, the district court properly determined that negligence is the standard of care to which law enforcement officers operating in the District are held. *See Biscoe v. Arlington County,* 738 F.2d 1352, 1364 (D.C.Cir.1984), *cert. denied,* 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985). Because the district court's finding of negligence is not clearly erroneous, we affirm.

I.

The events resulting in the Hetzels' injuries began as part of a criminal investigation by federal law enforcement officials that led to Union Station in the District of Columbia. On the morning of February 7, 1990, DEA officers lured a target of the investigation, Donald Hunter, to Union Station, where they intended to surround his car with government vehicles and arrest him.[1] When Hunter arrived, however, a taxi pulled in front of one DEA vehicle and provided Hunter with an avenue of escape. When an Amtrak investigator, with his weapon drawn, approached Hunter's car, Hunter fled, hitting the investigator's hand with the car, jumping the pedestrian island, and driving erratically and at a high speed into traffic on E Street, N.W. DEA Officer Forshey activated the emergency lights of his car and began a high-speed pursuit of Hunter. Forshey briefly lost sight of Hunter, but then resumed his pursuit on E Street between 2nd and 3rd Streets, N.W. Hunter was traveling between 60 and 70 miles an hour with Forshey following closely behind. At 9:30 a.m., Hunter ran a red light at the intersection of 3rd and E Streets, N.W., and collided with Mr. Hetzel, who was riding to work on his motorcycle.

Mr. Hetzel sustained a number of injuries, including an injury to his leg that required amputation below the knee. After pursuing administrative claims against the DEA, Mr. and Mrs. Hetzel sued the United States un-

---

1. The previous day, Hunter had arrived at Washington's National Airport in Virginia where a dog trained to identify illegal drugs indicated that the cash Hunter was carrying contained traces of cocaine. DEA officers confiscated the cash but released Hunter. The following morning, DEA officers arrested Hunter's associate at Union Station for cocaine possession. The officers then decided to lure Hunter to the Station.

der the FTCA. The district court found that the DEA's pursuit of Hunter "was in utter and careless disregard for the lives and safety of the Plaintiff and members of the public," and that the DEA's decision "to engage in a high-speed chase ... through busy Washington streets during rush hour was negligent." *Hetzel v. United States of America*, 1993 WL 294794, at *4, 5, 1993 U.S.Dist. LEXIS 7506, at *11, 14 (D.D.C. June 1, 1990). The district court awarded Mr. Hetzel $629,055.25 and awarded Mrs. Hetzel $25,000 for loss of consortium. *Id.* at *5, at *14. The United States appeals.

## II.

Under the FTCA, the United States is liable for torts committed by its agents "to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. This liability is defined "in accordance with the law of the place where the act or omission occurred." *Id.* § 1346(b).[2] The United States contends that the FTCA's reference to a "private individual" should be strictly construed to preclude reliance on liability standards applicable to municipalities and other public entities even when a readily available private analogue is absent. The United States nevertheless maintains that "for purposes of determining the applicable law here, the most appropriate standard ... is the standard of care used for D.C. Metropolitan Police under local law." It locates this standard in D.C.Code § 1–1212, which restricts the District of Columbia's right to interpose a defense of governmental immunity and provides that the District of Columbia shall be liable only for gross negligence arising from the operation of its emergency vehicles by its employees.[3] Because DEA Officer Forshey operated his official vehicle in an emergency pursuit, the United States maintains that evidence of gross negligence is a prerequisite to imposing liability pursuant to the FTCA and that the district court erred by imposing liability based only on a finding of negligence. We review this question de novo. *See, e.g., LTV Corp. v. Gulf States Steel, Inc. of Ala.,* 969 F.2d 1050 (D.C.Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 661, 121 L.Ed.2d 586 (1992).

■ No private individual has the authority to engage in a high-speed chase of a suspected felon as occurred here, and thus there is no readily available private analogue upon which to premise liability under the FTCA.[4] Other courts confronting the issue of FTCA liability in the law enforcement context have abandoned the private individual analogy and looked to the standards of care applicable to government employers under state law. *Stuart v. United States,* 23

2. Section 1346(b) of the FTCA provides that federal district courts:

shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on or after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

3. D.C.Code § 1–1212 provides:

Hereafter the District of Columbia shall not assert the defense of governmental immunity in any suit at law in which a claim is asserted against it for money only on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the District occurring as the result of the operation by such employee, within the scope of his office or employment, of a vehicle owned or controlled by the District: Provided, that in the case of a claim arising out of the operation of an emergency vehicle on an emergency run the District shall be liable only for gross negligence.

4. The Hetzels' contention that a private analogue to the DEA's conduct is found in District of Columbia and Maryland law authorizing "citizen's arrests" is unpersuasive. DEA officers are authorized to engage in high-speed pursuits of suspected felons such as the pursuit that caused appellees' injuries here, and the district court expressly found that DEA officers were acting within the scope of their employment on the day of the collision with Mr. Hetzel. *Hetzel,* at *2, *6. The law cited by the Hetzels does not authorize private individuals to engage in high-speed pursuits, and thus the analogy between the DEA's agent's conduct and that authorized by "citizen's arrest" laws is inapt.

F.3d 1483, 1487 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 357, 130 L.Ed.2d 311 (1994); *see also Doggett v. United States,* 875 F.2d 684, 689 (9th Cir.1989); *Tomcsik v. United States,* 720 F.Supp. 588, 591 (E.D.Mich.1989), *aff'd without opinion,* 917 F.2d 564 (6th Cir.1990), *cert. denied,* 499 U.S. 948, 111 S.Ct. 1417, 113 L.Ed.2d 470 (1991). We adopt this approach.[5]

This court has previously considered the standard of care applicable to a non-District of Columbia law enforcement official engaged in an authorized high-speed pursuit of suspect within the District's boundaries. In *Biscoe,* 738 F.2d at 1363, the court held that "the proper standard of care to be applied to the felony stop and pursuit ... [in] the District of Columbia is that of due care."[6] District of Columbia municipal regulations require all drivers, including "the drivers of all vehicles owned or operated by the United States, the District of Columbia, or any state, county, city, town, district, or any other political subdivision of any state" to obey generally applicable traffic regulations. *See* 18 D.C.M.R. § 2001.1 (1987). Although the regulations exempt "authorized emergency vehicles" that are "in pursuit of an actual or suspected violator of the law" from certain of the generally applicable traffic rules—including speed limits, parking rules, traffic lights, and stop signs, *see id.* § 2002.2—they expressly provide that the drivers of such vehicles in such circumstances remain subject to the general "duty to drive with due regard for the safety of all persons." *Id.* § 2002.4. In *Biscoe,* the court noted that courts in other jurisdictions have construed language similar to that in the District's regulation as permitting liability based on a finding of negligence. *Biscoe,* 738 F.2d at 1364 (citing cases).

■■■ In light of this regulation, D.C.Code § 1–1212's provision that "in the case of a claim arising out of the operation of an emergency vehicle on an emergency run the District shall be liable only for gross negligence" is best read as nothing more than a qualification to the general waiver of governmental immunity expressed in the first part of § 1–1212.[7] *Id.; see also Sisk v. Styer,* 1990 WL 141801, at \*4, 1990 U.S.Dist. LEXIS 12360, at \*10 (D.D.C. Sept. 18, 1990). As a partial waiver of the District of Columbia's governmental immunity, § 1–1212 cannot provide the basis to limit the liability of the United States under the FTCA. In *Indian Towing Co. v. United States,* the Supreme Court held that the United States remained liable under the FTCA for the Coast Guard's negligent operation of a lighthouse even though state law may have immunized municipalities from liability for the negligent maintenance of the navigation lights. The Court stated that the FTCA was "not self-defeating by covertly embedding the casuistries of municipal liability for torts," 350 U.S. at 65, 76

---

**5.** Although the United States argues against applying a municipal or state analogy in FTCA cases where a private analogue is absent, it nevertheless maintains that the applicable standard of care in the instant case is "the standard of care used for D.C. Metropolitan Police under local law." We find no substantive difference between the position the United States urges—reliance on the standard of care applicable to District of Columbia police officers—and that which it criticizes—the adoption of a municipal analogy by other courts.

**6.** In *Biscoe,* the court held that § 1–1212 did not apply to Arlington County and an Arlington, Virginia police officer in a suit brought by a bystander and his wife for injuries sustained as a result of the officer's negligent high-speed pursuit of a suspected felon into the District of Columbia. 738 F.2d at 1364. Construing § 1–1212 to be applicable only to conduct by District of Columbia employees, the court noted that vehicles of all police departments operating within

the District of Columbia must comply with the regulatory standard of due care. *Id.*

**7.** In 1960, the District of Columbia Board of Commissioners requested that Congress enact a statute partially waiving the District's governmental immunity because of concern with "the problem of protecting against financial loss any District of Columbia employee who may be subjected to a lawsuit for injury or damage allegedly arising out of the negligent operation of a motor vehicle while such employee is engaged in activities within the scope of his official employment." S.Rep. No. 1815, 86th Cong.2d Sess. 1, 2 (1960). At the time, the District of Columbia could not be sued for damages arising from the negligent operations of a police car or fire truck. 106 Cong. Rec. H15797 (daily ed. July 2, 1960) (statement of Rep. Davis). The legislative proposal envisioned that D.C. employees would be immune from suit and only the municipal corporation could be held liable. S.Rep. No. 1815, at 2.

S.Ct. at 124–25, and observed that the Court should not "as a self-constituted guardian of the Treasury import immunity back into a statute designed to limit it." *Id.* at 69, 76 S.Ct. at 126; *see United States v. Muniz,* 374 U.S. 150, 164, 83 S.Ct. 1850, 1859, 10 L.Ed.2d 805 (1963) ("it [is] improper to limit suits by federal prisoners [under the FTCA] because of restrictive state rules of immunity"); *Montes v. United States of America,* 37 F.3d 1347, 1351–52 (9th Cir.1994) (state immunity from liability for negligence in law enforcement pursuit inapplicable to United States in FTCA suit by victims of automobile collision with a car fleeing from the United States Border Patrol); *Stuart,* 23 F.3d at 1488 (same); *Wright v. United States,* 719 F.2d 1032, 1035 (9th Cir.1983) (state law immunizing public employees from liability for malicious prosecution inapplicable to federal employees under FTCA because state immunity does not determine the scope of the United States' liability under FTCA): Even if a state law concerning governmental immunity could be read to establish a standard of care where no other statute or regulation sets the standard of care for functions peculiar to government actors, *cf. Aguilar v. United States,* 920 F.2d 1475, 1479 (9th Cir.1990) (state monetary cap on damages applied to claim against federal officers under FTCA),[8] that case is not presented here. Instead, the standard of care for emergency vehicles in the District of Columbia is clearly set forth in D.C.M.R. § 2002.4, and D.C.Code § 1–1212 therefore has no application in this case. *See Muniz,* 374 U.S. at 164–65, 83 S.Ct. at 1858–

59 (noting that a federal jailor's duty of care is independently fixed by federal statute and cannot be affected by state immunity laws).

■ As a result, the standard of care to which the United States must be held in the instant case, where it seeks to apply the standard of care of D.C. Metropolitan Police Officers, is that of due care, or negligence, as set forth in District of Columbia regulations and explained by the court in *Biscoe.* Although the United States will be liable for conduct for which the District of Columbia is immune, this result follows directly from the interpretation of the FTCA adopted by the Supreme Court in *Indian Towing,* an interpretation that Congress has let stand for more than thirty years.[9]

### III.

■ Finally, the government's alternative argument, that the district court's finding that the DEA was negligent is clearly erroneous, is without merit. This court must defer to the district court's findings so long as they are supported by the record and are not clearly erroneous, and it will not reverse even if this court as the trier of fact would have weighed the evidence differently. *Cuddy v. Carmen,* 762 F.2d 119, 124 (D.C.Cir.), *cert. denied,* 474 U.S. 1034, 106 S.Ct. 597, 88 L.Ed.2d 576 (1985); FED.R.CIV.P. 52(a).

■ The district court found that the Hetzels had met their burden to prove negligence through evidence that Officer Forshey pursued the suspect by means of a high-speed chase in a heavily traveled area during

8. The Ninth Circuit has strictly limited the application of its divided opinion in *Aguilar,* 920 F.2d 1475. *See Montes,* 37 F.3d at 1351–52; *Stuart,* 23 F.3d at 1488.

9. Congress has left *Indian Towing* undisturbed notwithstanding its willingness, in other contexts, to limit the United States' liability under the FTCA. *See, e.g.,* PUB.L. 100–694, § 4 (1988) (1988 FTCA amendments adding language: "the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim....") (codified at 28 U.S.C. § 2674). Further, the Supreme Court observed in *Muniz* that:

Congress has taken steps to protect the [United States] Government from liability that would

seriously handicap efficient government operations.... [T]he Government is not without defenses. Most important, the Government is relieved from liability on "[a]ny claim [where its] employee ... [is] exercising due care, in the execution of a statute or regulation, ... or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty."

374 U.S. at 163, 83 S.Ct. at 1858 (quoting 28 U.S.C. § 2680(a) (emphasis in *Muniz* omitted)); *see, e.g., Morton v. United States,* 228 F.2d 431, 432 (D.C.Cir.1955), *cert. denied,* 350 U.S. 975, 76 S.Ct. 452, 100 L.Ed. 845 (1956) (United States not liable for claims based on discretionary function or duty); 28 U.S.C. § 2680(h) (same, as to intentional torts of its employees).

the morning rush hour. The district court also found that the officer's failure to abandon the chase after he lost sight of the suspect showed negligence. The court further found that the officer's conduct was contrary to the Guidelines of the D.C. Metropolitan Police Department and the International Association of Chiefs of Police.

■ The court found, specifically, that the officer activated his emergency lights and began his pursuit when the suspect jumped the pedestrian island in his car in front of the station after hitting another officer's hand with his car. After losing sight of the suspect in the unit block of E Street, Officer Forshey resumed pursuit of the suspect over the crest of a hill between 2nd and 3rd Streets. The suspect ran red lights before reaching 3rd Street, and he was speeding, weaving and driving recklessly from a moderately trafficked area into a heavily populated area. By the time the suspect approached the intersection of 3rd Street, he was traveling between 60 to 70 miles an hour, with the officer not more than two car lengths behind, and ran through a red light at 3rd Street. These findings are not clearly erroneous and the district court's conclusion is owed deference. *Cuddy v. Carmen*, 762 F.2d at 124. The district court could properly find that evidence showed that the DEA's high-speed pursuit of Hunter was negligent, and Officer Forshey's activation of his emergency equipment reinforces the district court's conclusion that Forshey was not merely following Hunter, but pursuing him in an effort to make an arrest.[10]

Accordingly, we affirm the judgment for the Hetzels.

STEPHEN F. WILLIAMS, Circuit Judge, concurring.

I write separately only to note my disagreement with the categorical dictum that "a partial waiver ... cannot provide the basis to limit the liability of the United States under [the Federal Tort Claims Act]." Maj. Op. at 1504.

In the present case a valid regulation set out a standard of care for a function peculiar to government actors—emergency vehicular pursuit of a fleeing violator of the law. But one can easily picture a case in which the only source of a duty of care for a government function is a statute, like D.C.Code § 1–1212, waiving government immunity, but only for actions based on gross negligence. The statute in that circumstance would have to be read as accomplishing the two purposes at once: setting the standard of care at gross negligence and waiving the immunity defense for suits brought under that standard. In that case, United States liability under the FTCA would be set by reference to that standard, the only standard supplied by state law.

The cases cited by the majority to support its dictum that partial waivers of state immunity are irrelevant to determination of the standard of care under the FTCA, see Maj. Op. at 1504–05 & n. 8, from *Indian Towing* to *Wright, Montes* and *Stuart,* stand only for the simple proposition that state laws providing for *complete* immunity from suit do not affect U.S. liability under the FTCA. Unlike laws waiving immunity for activity that fails to meet a specified standard of care, such rules of total immunity cannot conceivably be read as establishing a standard of care.

*Aguilar v. United States,* 920 F.2d 1475, 1479 (9th Cir.1990), see Maj.Op. at 1505, strikes me as a curious intermediate case. There a state statute waived immunity but, rather than setting a special standard of care, capped the damages. The court found the cap applicable to the United States's FTCA liability. Yet a cap seems likely to arise in large measure from a concern to protect the public fisc, i.e., the same purpose as has commonly been asserted as driving complete immunity, see 5 Fowler V. Harper et al., *The Law of Torts* § 29.3 (2d ed. 1985), and thus inconsistent with the impulses behind the FTCA. The special standard, by contrast, seems to embody the state's balance of the interest in the official's vigorous

---

10. The cases on which the United States relies to assert that the district court's finding is clearly erroneous are factually distinguishable and principally involve gross negligence rather than negligence.

pursuit of his activity against the competing interests that call for caution in that pursuit, i.e., a policy determination that the FTCA adopts by reference. Surely if *Aguilar* is correct, any standard of care specified in a state's partial waiver should govern FTCA liability.